Thomas S. Millett
PO Box 1075
Marion, MT 59925
406-212-3613
simplytom65@yahoo.com
(Defendant in Pro Per)

Michelle D. McLaughlin
PO Box 1075
Marion, MT 59925
(Defendant in Pro Per)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No.: 9:21-cv-47-DWM |
| | ) | |
| Plaintiff, | ) | |
| | ) | DEFENDANTS' MOTION FOR |
| v. | ) | JUDGMENT ON THE |
| | ) | PLEADINGS |
| THOMAS S. MILLETT; MICHELLE D. | ) | |
| MCLAUGHLIN; and FLATHEAD | ) | |
| COUNTY | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

Defendants Thomas Millett and Michelle McLaughlin hereby move the Court under

F.R.iv.P. 12(c) to enter judgment on the pleadings against plaintiff's Complaint in this

matter.  The allegations of Count 1 fail in several respects.  First, the tax, penalty, and

interest assessments alleged in the Complaint lack any factual support whatever, and are

nothing but mere 'naked assessment' claims, with arbitrary numbers just pulled from the

1

blue sky. The allegations also do not even show the alleged assessments came within the limited authority and conditions congress imposed for allowing assessments. The alleged assessments, as well as this collection suit, are also statutorily barred.

But even assuming valid assessment and lien claims do exist, and the action is not barred, the Court should determine (i) Michelle McLaughlin has an interest in the real property at issue in this case, and (ii) the tax lien claims do not reach her interest.

## Background

This matter was filed by the United States on 4/20/21. The first count of the Complaint makes bare-bone allegations of assessments of income tax, penalties, and interest being made against defendant Millett for years 2004 - 2017. Doc 1, ¶18. No factual allegations exist that might support the assessment amounts, penalties, or interest. The sole allegation is Millett is somehow liable for the claims, without any factual allegations whatever to support the claims made.[1]

Subsequently, on 2/10/22 Millett filed an Answer to the Complaint denying the operative allegations, along with a counterclaim. Doc 25. The counterclaim was eventually dismissed on 7/5/22. Doc 39.

A scheduling order was entered 5/18/22 which set the following deadlines:

---

[1] The sole allegation made in ¶18 of the Complaint states: "A duly authorized delegate of the Secretary of the Treasury made timely assessments against Thomas S. Millett for unpaid federal income taxes (Form 1040), penalties, interest, and other statutory additions as follows:" [table of alleged assessment dates, tax year, type of tax, and amounts].

amended pleadings by 5/18/22; discovery due by 1/6/23; motion deadline 2/13/23; final

pre-trial order by 3/20/23; and final pre-trial conference/trial on 3/27/23.  Doc 35.

## 1.    Motion Standard.

A motion for judgment on the pleading under Rule 12(c) can be made only after

the pleadings are closed, and is treated the same as a motion to dismiss under Rule

12(b)(6).  *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).  Thus,

the pleading standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-80, 129 S. Ct.

1937, 173 L. Ed. 2d 868 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

554-563, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), applies to a motion for judgment on

the pleadings.  *Cafasso v. Gen. Dynamics C4 Sys., Inc*., 637 F.3d 1047, 1054-55 & n.4

(9th Cir. 2011).  To survive a Rule 12(c) motion premised on the plaintiff's failure to state

a claim, the complaint must contain sufficient *factual* matter, accepted as true, that states

a claim to relief that is "plausible on its face." *Iqbal*, 556 U.S. at 678. "A claim has facial

plausibility when the plaintiff pleads *factual content* that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id* (emphasis

added).  Allegations that are *merely consistent with liability fall short of plausibility of

entitlement to relief*. *Id*.

Although a court must accept plaintiff's allegations as true and draw inferences in

plaintiff's favor, a pleading that only offers 'labels and conclusions' or 'a formulaic

recitation of the elements of a cause of action will not do.' *Iqbal*, at 678.  Nor does a

complaint suffice if it tenders 'naked assertion[s]' devoid of factual enhancement. *Id*. Although specific facts are not necessary; the statement needs to give the defendant fair notice of what the claim is *and the grounds upon which it rests*. It is also not the Court's burden to supply additional factual allegations to round out a plaintiff's complaint. See *Ivey v. Bd. Of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

Finally, if conditions precedent exist for a claim, the condition(s) must be alleged as required under F.R.Civ.P. 9(c) or it can be assumed the conditions were not satisfied. *Coffman v. Hutchinson Cmty. Coll.*, 2017 U.S. Dist. LEXIS 155052, *10-12.

## 2.    Summary of Complaint.

Count I of the Complaint in this matter merely alleges the recording of various amounts of income tax, penalty, and interest assessments against defendant Millett relating to years 2004 - 2017. There are no allegations as to any factual basis/grounds for any of the alleged tax, penalty, or interest assessments. According to the Complaint, the numbers were just pulled from the blue sky. Further, no allegations exist as to whether the tax assessments are based on any return/list, or based on a deficiency claim. Also, no factual allegations exist that might support the assertion of the various alleged penalties or interest claims. They are all merely bald naked assertions without any basis in fact.

Count II alleges the existence of an initial joint tenancy in the property between Millett and McLaughlin, with Millett later conveying his (50%) interest to McLaughlin on September 18, 2012. Doc 1, ¶11 - 12 (incorporated into Count 2 by ¶23). It seeks a

determination that Millett is the 'true owner' of the property, and McLaughlin "holds an interest in the Subject Property as the nominee of Thomas S. Millett". Id, ¶21 - 28.  It is unclear whether any determination is sought that ignores/denies McLaughlin's separate interest in the property resulting from the prior joint tenancy.

Similar to Count II, Count III alleges Millett's transfer of his (50%) interest in the property to McLaughlin was 'fraudulent' as to plaintiff and should be set aside because Millett incurred the above (unexplained) tax debt claims, and the transfer "was made with the intent to hinder, delay, or defraud Thomas S. Millett's creditors, including the United States" and was made "without receiving a reasonably equivalent value in exchange".  Id, ¶29 - 31.

Count IV alleges the recording of various tax lien notices against Millett for the above tax claims, as well as recording of a lien notice against McLaughlin as being a purported 'nominee' of Millett. Id, ¶32 - 38.  It alleges the "United States is entitled to declaratory judgment finding that its federal tax liens against Thomas S. Millett attach to the Subject Property on the basis that Michelle D. McLaughlin is the nominee or fraudulent transferee of Thomas S. Millett, and Thomas S. Millett is the true owner of the Subject Property." Id, ¶37.

The only relief sought is (i) a determination that defendant Millett is indebted for the tax claims; (ii) plaintiff has valid lien claims against all property and rights to property of Millett; (iii) that defendant McLaughlin holds interest in the property as the 'nominee'

of Millett; (iv) the transfer of the property from Millett to McLaughlin was fraudulent as to plaintiff and has no effect on the lien claims; (v) the lien claims attach to the property; (vi) a determination of the validity and priority of any claims or interest in the property by other named defendants; and (vii) costs of the action. Id, p 15 - 16.

## ARGUMENT

**3.    The Complaint Fails To State Valid Assessment Claims.**

26 U.S.C. §6201 provides the sole authority for making assessments for the entire federal tax code. In relevant part, subsection (a) states:

> "Such authority shall extend to and include the following:
> (1) Taxes shown on return
> The Secretary shall assess all taxes determined by the taxpayer or by the Secretary *as to which returns or lists ... are made* under this title." (Emphasis added)

Subsection (e) refers to subchapter B of the code for "deficiencies of income, estate, gift, and certain excise taxes". According to the above, in order for authority to exist at all for making any assessment, either a 'determination' of tax must be made on a 'return or list', _or_ deficiency procedures must be followed (in 26 U.S.C. §6211 and §6212). These are *limitations* and *conditions precedent* congress imposed for making assessments. No assessment are otherwise authorized or allowed.

In view of the above statutory limitations, it would certainly be reasonable to conclude that a tax collection complaint would need to allege compliance with at least one of the authorized conditions for making any assessment, and the condition precedent requirements of F.R.Civ.P. 9(c) would apply. As discussed above, if no such allegations

6

are made, it can be assumed the conditions were not satisfied.

In the instant case, the Complaint fails to make one single allegation of compliance with any of the conditions for making any assessments. There are no allegations the alleged assessments are based on any 'return or list'. There are also no allegations the assessments are based on compliance with the deficiency procedures in 26 U.S.C. §6212.[2] The only allegation is the bald claim of making assessments. Without any allegation of compliance with any of the statutorily imposed conditions for making any assessments, the Complaint fails to show any authority ever extended to the assessments alleged. There are simply no allegations to show the assessments were even authorized at all.

The thread-bare allegation of making assessments is no substitute for  allegations

---

[2]  §6212 requires a 'notice of deficiency' to be mailed to a taxpayer's last known address. In turn, 26 U.S.C. §6213(a) specifically bars any assessment and/or collection (including collection suits) without a prior deficiency notice. §6213(a) states "Except as otherwise provided in section 6851, 6852, or 6861 *no assessment* of a deficiency in respect of any tax imposed by subtitle A, or B, chapter 41, 42, 43, or 44 *and no levy or proceeding in court for its collection* shall be made, begun, or prosecuted until such notice [of deficiency] has been mailed to the taxpayer...." (Emphasis added). None of the exceptions apply to this case. Thus, if any assessments alleged in the Complaint are based on any deficiency claim, they would be invalid and this very action would also be barred unless there was first compliance with the notice of deficiency procedures. At least one court has held this issue to be jurisdictional. *United States v Ball*, 326 F.2d 898, 902-3 (4th Cir. 1964) (lack of deficiency notice is jurisdictional defect to collection suit); also see *U.S. v. Goldston*, 324 Fed.Appx. 835, 837 (11th Cir. 2009)
(before the IRS takes steps to collect unpaid taxes, it must send the taxpayer a notice of deficiency).
In the instant case, the Complaint's total failure to state whether the assessments are based on 'returns or lists', *or* based on deficiency claims is a serious defect, and shows a lack of assessment authorization under §6201. §6213(a) should bar this action as well.

that might show the conditions precedent for making them. Since no allegations even remotely exist to show the alleged assessments came within the authority and conditions of §6201, they fail to state a claim for relief.

The allegations also show nothing but bare naked claims with no foundation whatever. "What we have is a 'naked' assessment without any foundation whatsoever..." *United States v. Janis*, 428 U.S. 433, 441 (1976). In that situation, the "determination of tax due then may be one 'without rational foundation and excessive,' and not properly subject to the usual rule with respect to the burden of proof in tax cases." *Id*. The debated rule is whether the burden is on the taxpayer to show the correct tax amount. But that 'debate does not extend to the situation where the assessment is naked and without any foundation'. *Id* at 442. In that situation, the government bears the burden. Since the burden is on the government, it certainly stands to reason that some facts must be alleged to support the assessments alleged. Since no such allegations exist (not even basic allegations of income for any year), there is simply no support for the thread-bare naked assessment claims.

Similarly, under 26 U.S.C. 7491(c) the government also bears the burden of production concerning any penalties it may assert. Certainly when a party has a burden of production, they would also have a corresponding obligation to at least include some sort of factual allegations in a Complaint to attempt sustaining that burden. Since no such allegations exist in this case, there is simply nothing to support the naked penalty claims.

The Complaint in this case does not even attempt to come close to alleging any of the above. The *sole* allegations are (i) the making of tax assessments, (ii) the making of penalty assessments, and (iii) the making of interest assessments. No grounds are alleged for any of the assessment claims. This is the exact sort of thread-bare 'naked assertion[s]' devoid of factual enhancement discussed in *Iqbal*. Even if it could be argued the allegations give notice of what the claims are, there are absolutely no facts alleged about 'the grounds upon which they rest'. Without any basis alleged to support the claims made, they are just naked assessment claims, and are insufficient to state any claim for relief. The bare naked tax assessment claims made in Count 1 of the Complaint should therefore be dismissed. (Of course, if Count 1 is dismissed, the remaining Counts of the Complaint should also be dismissed since they are all based on Count 1).

**4.    Michelle McLaughlin's Interest In The Property Cannot Be Affected By Tax Lien Claims Against Thomas Millett.**

¶11 of the Complaint alleges the creation of a joint tenancy in the property between Millett and McLaughlin on March 20, 2012, with Millett later conveying his interest to McLaughlin on September 18, 2012. Doc 1, ¶11 - 12. On the same day in September 2012 McLaughlin recorded her homestead declaration regarding the property. See Request For Judicial Notice, Exh A. Count 2 of the Complaint seeks a determination that Millett is the 'true owner' of the property, and McLaughlin "holds an interest in the Subject Property as the nominee of Thomas S. Millett". Id, ¶21 - 28. It is unclear

9

whether any determination is sought that ignores/denies McLaughlin's separate interest in the property resulting from the prior joint tenancy.

Similar to Count II, Count III alleges Millett's transfer of his interest in the property to McLaughlin was 'fraudulent' as to plaintiff and should be set aside. Id, ¶29 - 31.

Count IV alleges the recording of various tax lien notices against Millett for the above tax claims, as well as recording of a lien notice against McLaughlin as being a purported 'nominee' of Millett. Id, ¶32 - 38. It alleges the "United States is entitled to declaratory judgment finding that its federal tax liens against Thomas S. Millett attach to the Subject Property on the basis that Michelle D. McLaughlin is the nominee or fraudulent transferee of Thomas S. Millett, and Thomas S. Millett is the true owner of the Subject Property." Id, ¶37. The Complaint does _not_ seek any lien foreclosure or forced sale of any property. Instead, it appears to only seek a determination of the existence of tax liens against the property interests of Thomas Millett; and the only property interest identified is the real estate identified in the Complaint. The Complaint does not state what percentage of interest it seeks in the property by virtue of its lien claims against Millett. According to Flathead County records, the value of the property in 2022 is $304,900. See Request For Judicial Notice, Exh B.

First of all, any claim that Millett is the sole 'true owner of the property' must be rejected on its face given the joint tenancy that existed from the beginning of the property

10

ownership. Montana law has long recognized and declared a joint tenancy is ownership by parties *in equal shares*. *In re Estate of Hill*, 281 Mont. 142, 146 (Mont S.C. 1997); *Rausch v. Hogan*, 2001 MT 123, P24 (Mont S.C. 2001). Under this arrangement, at the time of the joint tenancy, both McLaughlin and Millett had a 50% ownership interest in the property equity. According to the Complaint, Millett later conveyed his 50% interest to McLaughlin. This left McLaughlin with her original 50% interest, plus Millett's 50% interest. But even without Millett's conveyance, McLaughlin has always had at least a 50% interest in the property. Therefore, any contention that Millett should be declared the 'sole true owner' of the property would be wrong as a matter of law. Also, on the same day Millett made his conveyance, McLaughlin recorded a homestead claim in the property.

It has long been recognized that a federal tax lien does not extend beyond the property rights of the taxpayer, and the government may not ultimately collect beyond the extent of the property interests that may actually be liable for the debt. *United States v. Rodgers*, 461 U.S. 677, 690-691 (1983) (the Government's lien under § 6321 cannot extend beyond the property interests held by the delinquent taxpayer; the Government may not ultimately collect, as satisfaction for the indebtedness owed to it, more than the value of the property interests that are actually liable for that debt). In a situation where tax claims exists against property jointly owned by a taxpayer and a non-liable party, a tax lien cannot extend to the non-liable party's interest in the property.

For example, assuming only for the sake of argument, if the property was ordered

to be sold for tax claims in this circumstance, non-liable party McLaughlin would have to be paid for: (i) her 50% ownership interest, plus (ii) any homestead exemption claim, plus (iii) any relocation costs. *See Rodgers* at 698-704. This compensation would be required because (assuming arguendo the property could be forcibly sold), any tax liens would simply *not* attach to McLaughlin's property interest and she would therefore have to be paid for her lost property rights from any forced sale. Therefore, any tax lien claim against Millett does not extend to McLaughlin's interests in the property.[3]

As discussed above, McLaughlin has always had at least a 50% interest in the property; an interest to which any tax lien claims against Millett could not attach. In addition to her ownership interest, Mclaughlin also has a homestead claim interest. As of 2022, this claim exempts $350,000 of value from creditors. See *J & L Lands v. Nezat*, 2022 MT 111, P8-P11 (Montana SC 2022) (a creditor cannot execute on a homestead valued at $350,000 or less to satisfy a judgment; homestead claim may be made even after creditor obtains judgment). Also, as held in *Nezat*, a homestead claim even applies where an interest in property that has a judgment lien is conveyed from another party to the homestead claimant. *Id* (Under the homestead exemption statutes, Nezat was entitled to declare and have the full protection of the homestead exemption on the Property even

---

[3] A 'lien' of course is a secured claim against property that is enforceable by sale of property in order to generate funds, at least some of which would be paid to the lien holder. But if no funds would be paid to a lienholder, there really is no secured interest, and therefore no lien.

after judgment had been entered against Meadows and attached to any interest she had in the Property before it was conveyed back to him).

As discussed in *United States v. Rodgers*, homestead exemptions by non-liable parties must be recognized. They are therefore not subject to tax lien claims against another party. In this case, McLaughlin's homestead exemption alone is $350,000. This exceeds the $304,900 value of the property all by itself. In addition, at a minimum, McLaughlin also has a 50% ownership interest in the property value. Since these amounts far exceed the entire value of the property, there is simply nothing left for any tax lien against Millett to attach to. The Court should therefore determine that the tax lien claims asserted in the Complaint simply do not attach to the real property at issue.

CONCLUSION

The tax, penalty, and interest claims made in the Complaint against Thomas Millet fail to allege *any* grounds for them whatsoever. They are based on nothing but arbitrary numbers pulled from the blue sky, without any factual basis/grounds whatever alleged in the Complaint. There are also no allegations that show the alleged assessments were even made according to the limited authority congress has provided for making assessments at all. Of course, without valid assessments, no grounds exists for asserting any tax lien claims whatever against Millett, much less nominee or fraudulent transfer claims regarding the property at issue.

In addition to the above, even if any lien claims did exists against Millett, they

13

simply could not attach to Michelle McLaughlin's interest in the property. Including her homestead claim, her interest in the property exceeds the entire property value. Assuming for the sake of argument that a forced sale occurred, McLaughlin would be entitled to all the proceeds. Therefore, no equity exists for any tax lien claim against Millett's possible interest in the property, and any tax lien claim against Millett simply could not attach to the property.

For the foregoing reasons, the Court should grant this motion, dismiss the Complaint. Alternatively, should the Court decline to dismiss the tax claims in Count 1, it should declare that if any tax liens actually do exist against Thomas Millett, they do not attach to the property at issue.

Submitted by,


 /s/ Thomas S. Millett                              /s/  Michelle D. McLaughlin
Thomas S. Millett                                 Michelle D. McLaughlin
PO Box 1075                                        PO Box 1075
Marion, MT 59925                                   Marion, MT 59925

CERTIFICATE OF COMPLIANCE

It is hereby certified that the number of words in the foregoing document is 3719 according to the count of the word processing system used.

CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that on this 13th day of December 2022, I electronically filed the foregoing document and accompanying REQUEST FOR JUDICIAL NOTICE, using the CM/ECF system, which will send notification of such filing to the following:

Chelsea Bissell
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Ben Franklin Station
Washington, D.C. 20044-0683
(Attorney for United States)

/s/ Thomas S. Millett