UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

UNITED STATES OF AMERICA,          )
                                   )
            Plaintiff,             )
                                   )
v.                                 )
                                   ) Case No.
THOMAS S. MILLETT, MICHELLE        ) 9:21-cv-00047-DWM
D. MCLAUGHLIN, and FLATHEAD        )
COUNTY,                            )
                                   )
            Defendants.            )

Witness located at 775 Pleasant Valley Road
Marion, Montana
Wednesday, January 4, 2023 - 8:59 a.m. MST

TELEPHONIC DEPOSITION

OF

THOMAS S. MILLETT

Reported by Deborah Meredith, RPR, CRR, Jeffries Court
Reporting, Inc., 1015 Mount Avenue, Suite B, Missoula,
Montana 59801, (406)721-1143, Freelance Court Reporter
and Notary Public for the State of Montana, residing
in Hamilton, Montana, jcrcourt@montana.com

1               A P P E A R A N C E S

2

3   Chelsea Bissell, Esq. (via Webex)
    Lolita De Palma, Esq.
4   Trial Attorneys, Tax Division
    U.S. Department of Justice
5   P.O. Box 683
    Ben Franklin Station, Washington, D.C. 20044-0683
6   Chelsea.E.Bissell@usdoj.gov
    Lolita.DePalma@usdoj.gov
7   Associated Staff:
    Western.TaxCivil@usdoj.gov
8       appearing on behalf of Plaintiff U.S.A.

9

10  Thomas S. Millett
    775 Pleasant Valley Road
11  Post Office Box 1075
    Marion, Montana 59925
12  simplytom65@yahoo.com
        appearing pro se.

13

14

15

16

17

18

19

20

21

22

23

24

25

Case 9:21-cv-00047-DWM   Document 53-14   Filed 02/09/23   Page 3 of 83

1                         I N D E X

2

3   WITNESS:                                    PAGE:

4   THOMAS S. MILLETT

5   Examination by Ms. Bissell                      4

6

7   Certificate of Court Reporter                  73

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 4

Case 9:21-cv-00047-DWM   Document 53-14   Filed 02/09/23   Page 4 of 83
UNITED STATES OF AMERICA V. MILLETT, et al.   1/4/2023                    THOMAS S. MILLETT

1          WEDNESDAY, JANUARY 4, 2023
2  Thereupon,
3               THOMAS S. MILLETT,
4  a witness of lawful age, having been first duly sworn
5  to tell the truth, the whole truth and nothing but the
6  truth, testified upon his oath as follows:
7                    EXAMINATION
8  BY MS. BISSELL:
9      Q.  Okay.  Give me one second.
10      A.  Ms. Bissell, just so you know, I could
11  not connect to the internet for this call, I had to
12  use my phone.  For some reason there's a firewall
13  and I can't get in, so -- just so you know.
14      Q.  Okay, that's great.  I can hear you
15  perfectly fine, so that should work.
16          Okay.  So, Mr. Millett, today -- And I am
17  pronouncing your name correctly, right, or is it
18  Millett?
19      A.  Either way, it doesn't matter.  I go by
20  either.  Most people get it messed up, but I don't
21  care anymore.
22      Q.  Okay.  Well, what's the correct way?
23      A.  Millett.
24      Q.  Millett, okay.
25          So today's January 4th, 2023.  We are now

1 on record in the case pending in the U.S. District

2 Court of the District of Montana, Case

3 Number 9:21-cv-47.  My name is Chelsea Bissell, I'm

4 a trial attorney with the U.S. Department of

5 Justice, Tax Division.

6         MS. BISSELL:  Can all parties present

7 please state their name.

8         THE WITNESS:  I'll go first.  My name is

9 Thomas Millett.

10         MS. DE PALMA:  I'm Lolita De Palma at

11 DOJ.

12         COURT REPORTER:  Deb Meredith, the court

13 reporter.

14     Q.  (BY MS. BISSELL)  Mr. Millett, is

15 Ms. McLaughlin on the phone with you?

16     A.  She is not.

17     Q.  Can she hear the deposition?

18     A.  She may, she's in another room.  She's

19 not feeling very well.

20     Q.  Okay.  If she does enter the same room as

21 you, can you please let us know so she can make an

22 appearance?

23     A.  I will do that, yes.

24     Q.  All right, thank you.

25         Okay.  Mr. Millett, do you have any

1  former names?

2          A.   I do not.

3          Q.   Any nicknames or aliases?

4          A.   I do not.

5          Q.   What's your current address?

6          A.   My current mailing address is 1075 --

7  P.O. Box 1075, Marion, Montana 59925.

8          Q.   What about your correct residential

9  address?

10         A.   My current residential address is 775

11  Pleasant Valley Road, Marion, Montana 59925, when

12  I'm in Montana.

13         Q.   Okay.  I'm going to go over some ground

14  rules for depositions.  After every rule I say, can

15  you give me a verbal indication that you

16  understand?  Just say okay or I understand.

17         A.   Certainly.

18         Q.   Okay.  This deposition is being taken in

19  accordance with the Federal Rules of Civil

20  Procedure, that means that your answers will be

21  recorded by the court reporter and she will record

22  every word.  She is here at my request and she will

23  keep recording until I instruct her to stop.

24              Because your answers will be recorded by

25  the court reporter, it is important that you answer

Case 9:21-cv-00047-DWM   Document 53-14   Filed 02/09/23   Page 7 of 83

1 verbally and you answer clearly.  It is in all of

2 our natures to respond to questions by saying

3 uh-huh or nodding, but these will not be recorded,

4 so it's important that you give verbal answers,

5 even though it feels a bit unnatural; do you

6 understand?

7        A.  I do understand.

8        Q.  If I ask a question that's unclear,

9 please let me know and I will rephrase it; does

10 that make sense?

11        A.  Yes.

12        Q.  Okay.  If you answer a question, I will

13 assume that you've heard it and understood it and

14 you have given me an answer to the best of your

15 recollection, okay?

16        A.  Yes, ma'am.

17        Q.  Because the deposition is being

18 transcribed, it's important that you let me finish

19 my question before you answer, and I will extend to

20 you the same courtesy so the record is clear; is

21 that right?

22        A.  I agree.

23        Q.  If you don't know the answer to a

24 question, say that you don't know.  Sometimes it

25 will happen that you will give the answer to a

Case 9:21-cv-00047-DWM    Document 53-14    Filed 02/09/23    Page 8 of 83

1 question as completely as you can, and then later

2 on, you'll remember something a little bit

3 different or something that I ask will jog your

4 memory, so please let me know if that occurs and we

5 can go back to the question and you can answer it,

6 okay?

7          A.  Okay.

8          Q.  All right.  Please do not consult with

9 anyone while a question is pending or talk to

10 anyone while questioning is ongoing.

11          A.  I understand.

12          Q.  Okay.  And since this is, I guess, a

13 virtual, on-the-phone deposition, there are

14 additional ground rules we have to keep in mind.

15 So you cannot mute yourself while the deposition is

16 ongoing; do you understand?

17          A.  I understand.

18          Q.  Okay.  Please do not use your phone,

19 text, email or instant message while the deposition

20 is ongoing.

21          A.  I will not.

22          Q.  Okay.  If there's a tech issue and if you

23 cannot hear me or I can't hear you, please let me

24 know as soon as it occurs.

25          A.  Okay.

Case 9:21-cv-00047-DWM   Document 53-14   Filed 02/09/23   Page 9 of 83

1   Q.  Okay.  If for some reason our connection

2 drops or your connection drops, I'll wait for you

3 to reconnect, and if my connection drops, please

4 wait for me to connect as well, and the same goes

5 with Debi and Ms. De Palma, if their connection

6 drops, we have to suspend the deposition until they

7 can rejoin us.

8   A.  Okay, I understand.

9   Q.  We will go off the record if there's a

10 tech issue that lasts longer than a minute, this

11 ensures that troubleshooting not eat into the

12 deposition time.

13   A.  Okay.

14       MS. BISSELL:  Debi, did you have

15 something?

16       COURT REPORTER:  Nope, I'm good.

17   Q.  (BY MS. BISSELL)  Okay.  I understand

18 that you've been asked some of these questions that

19 I'm going to ask before in the course of discovery,

20 you still need to give complete answers to the

21 questions, even if you've fully answered the

22 question previously.

23   A.  Okay.

24   Q.  Okay.  So there's a series of questions

25 that I have to ask you to get at capacity, they're

UNITED STATES OF AMERICA v. MILLETT, et al.  1/4/2023                    THOMAS S. MILLETT

1  standard questions that are asked before any

2  deposition.  It's not meant to be offensive or

3  invasive, it just has to get to whether or not the

4  deponent has the correct capacity to have their

5  deposition taken.

6          A.  Okay, I understand.

7          Q.  I'm sorry, go ahead.

8          A.  I said, okay, I understand.

9          Q.  Okay.  Have you taken any medication or

10 ingested any substance that may affect your ability

11 to remember, understand, or tell the truth today?

12         A.  I have not.

13         Q.  Are you under a doctor's care for any

14 medical condition that could prevent you from

15 sitting for seven hours or understanding or

16 answering any of my questions?

17         A.  No.

18         Q.  Have you ever been convicted of a

19 criminal offense?  And this includes minor traffic

20 violations, such as like speeding tickets,

21 et cetera.

22         A.  Wow, going back over 30 years, I might

23 have had a speeding ticket or two in my younger

24 days.

25         Q.  Okay.  Have you ever given testimony

**JEFFRIES COURT REPORTING, INC.**
**(406) 721-1143**

UNITED STATES OF AMERICA v. MILLETT, et al.   1/4/2023                    THOMAS S. MILLETT

1  under oath before?

2        A.  No.

3        Q.  Have you ever been deposed before?

4        A.  No.

5        Q.  And is there any other reason that you

6  cannot give full, complete and accurate testimony

7  today?

8        A.  Not to my knowledge, no.

9        Q.  What did you do to prepare for this

10  deposition?

11        A.  I reviewed all the documents that the

12  court has sent me and you have sent me.

13        Q.  Did you speak to anyone prior to the

14  deposition regarding the deposition?

15        A.  I'm going to have to object to that

16  question, attorney-client privilege.

17        Q.  Are you represented?

18        A.  I am not.

19        Q.  Then what attorney-client privilege would

20  exist?

21        A.  Well, I have talked to an attorney about

22  depositions, but I have not hired that attorney.

23        Q.  Have you talked to an attorney about

24  depositions in general?

25        A.  Yes.

Case 9:21-cv-00047-DWM   Document 53-14   Filed 02/09/23   Page 12 of 83

1     Q.  Have you talked to an attorney about this

2  deposition?

3     A.  No.

4     Q.  And have you hired this attorney?

5     A.  I have not.

6     Q.  What is this attorney's name?

7     A.  I'm not at liberty to tell.

8     Q.  You're not at liberty to the tell me what

9  attorney you spoke with?

10     A.  Correct.

11     Q.  Is it someone in Marion?

12     A.  No.

13     Q.  Mr. Millett, you sent me an email this

14  morning stating that you are unable to attend the

15  deposition in person because you are not feeling

16  well, what symptoms do you currently have?

17     A.  I have a runny nose, a little bit of a

18  scratchy throat.

19     Q.  And when did these symptoms start?

20     A.  Yesterday.

21     Q.  Have you gone to see a doctor?

22     A.  No, I have not.

23     Q.  Are you taking any medication to help

24  with your symptoms?

25     A.  I am not.

Case 9:21-cv-00047-DWM   Document 53-14    Filed 02/09/23    Page 13 of 83

1    Q.  Are there any other symptoms?

2    A.  I didn't hear you.

3    Q.  Are there any other symptoms?

4    A.  No.

5    Q.  Also in that email you indicated that you

6  were leaving town on January 6th; is that correct?

7    A.  That is correct.

8    Q.  And where are you heading?

9    A.  And why is this relevant?

10    Q.  Please answer the question, Mr. Millett.

11    A.  I'm answering it.  Why is this relevant?

12  I don't see the relevancy of this question.

13    Q.  It's relevant because, of course, we

14  planned a deposition, we noticed the deposition to

15  be in person in Missoula today for yourself and

16  then tomorrow for Ms. McLaughlin, you changed the

17  plans very last minute, which impedes our ability

18  to completely go through discovery and get the

19  information that we need in order to continue with

20  this case.

21         You're saying that you will be out of

22  town for a few months, up until March 1st, and so,

23  therefore, you cannot continue the deposition at

24  that time.

25         Because this is your reason for not

Case 9:21-cv-00047-DWM   Document 53-14   Filed 02/09/23   Page 14 of 83

1 showing up and not -- for us not being able to

2 conduct a proper deposition, it is relevant, so you

3 may answer the question.

4       A.  I'm not going to answer the question.

5       Q.  On what grounds?

6       A.  Personal privilege, that is private

7 information that's not related to this case.  It is

8 sufficient for you to know that I will be out of

9 town and out of state and I have stated so.

10       Q.  Will you remain in the country?

11       A.  Yes, I will remain in the country.

12       Q.  Will you return to Marion?

13       A.  Yes, I will.

14       Q.  And on what date?

15       A.  I don't know an exact date, that's why I

16 put approximately March 1st.

17           Let me clarify.  I will be back by

18 March 1st, I don't know the exact date.

19       Q.  On the ticket you sent me, it says that

20 you are returning on January 6th, 2023.

21       A.  Correct.  That is a round-trip ticket

22 from my initial destination to here.  Now I have to

23 go back there, and I have not purchased my ticket

24 coming back here yet.

25       Q.  So are you currently in Montana?

1      A.  Yes, I am.

2      Q.  Okay.  But this ticket that you sent me

3  says that you are returning to Kalispell on

4  January 6th?

5      A.  No, it does not.  It says I'm returning

6  to my initial destination on January 6th.  I'm

7  flying from Kalispell to my original destination on

8  January 6th.

9      Q.  When you say original destination, what

10  do you mean by that?

11      A.  Where I came from.

12      Q.  Where you came from when?

13      A.  I came from my original destination

14  December 19th.

15      Q.  What do you mean by original?

16      A.  Original destination, where I started my

17  trip from.

18      Q.  What trip are you talking about?

19      A.  The trip that I'm currently on.

20      Q.  You're currently on a trip?

21      A.  Yes.

22      Q.  But you are at home in Marion, Montana;

23  is that correct?

24      A.  Well, I call this my home of record.

25  When I'm in Montana, this is where I stay.

UNITED STATES OF AMERICA v. MILLETT, et al.   1/4/2023                    THOMAS S. MILLETT

1       Q.   So you are returning to your home?

2       A.   No, I'm returning to my destination.   I

3  don't consider that my home, it's where I stay when

4  I'm away.

5       Q.   Do you own any real property?

6       A.   I do not.

7       Q.   So you do not own your home in Marion,

8  Montana?

9       A.   I do not.

10      Q.   Do you own the home that you are

11 referring to as the original destination?

12      A.   I do not.

13      Q.   Where were you born?

14      A.   How is that relevant?

15      Q.   You can answer the question.

16      A.   How is that relevant to this case?

17      Q.   When were you born?

18      A.   When was I born?

19      Q.   What's your birthday?

20      A.   My birthday is                1965.

21      Q.   And where did you grow up?

22      A.   Why is this relevant to this case?

23      Q.   These are common questions that are asked

24 in depositions.

25      A.   Well, I will not answer that question

UNITED STATES OF AMERICA v. MILLETT, et al.   1/4/2023                    THOMAS S. MILLETT

1 because it's not relevant.

2      Q.   Did you graduate high school?

3      A.   Yes, I graduated high school.

4      Q.   Did you get an undergraduate degree?

5      A.   No.

6      Q.   Can you tell me about the jobs you've had

7 since college.

8      A.   I'm thinking.  Hold on.

9           I'll tell you one that I had, and that

10 was, when I got out of high school, I joined the

11 U.S. Navy.

12     Q.   Did you enlist?

13     A.   Yes.

14     Q.   What year?

15     A.   1983.

16     Q.   And how long did you serve in the Navy?

17     A.   Eight years.

18     Q.   And what was your role there?

19     A.   I was a sailor.

20     Q.   Anything specifically?

21     A.   I was in the nuclear power program.

22     Q.   Okay.

23     A.   An engineer.

24     Q.   I'm sorry.  What was that?

25     A.   Nuclear engineering.

UNITED STATES OF AMERICA v. MILLETT, et al.  1/4/2023                THOMAS S. MILLETT

1        Q.  Do they call it an MOS in the Navy?  I

2  know in the Army they do.

3        A.  No.

4        Q.  Okay, okay.  And -- (audio feeds breaks

5  up.)

6        A.  Hello?  You're breaking up.

7        Q.  Oh, sorry.

8            When you got out of the Navy, what did

9  you do?

10       A.  I did a few things when I got out of the

11  Navy.  I repaired photocopiers.

12       Q.  How long did you do that?

13       A.  Two years.

14       Q.  And where did you work when you repaired

15  photocopiers?

16       A.  I don't see how these questions are

17  relevant, so I will not answer that.

18       Q.  Have you ever used your experience as a

19  nuclear engineer in the Navy in future careers?

20       A.  Yes.

21       Q.  And what career would that be?

22       A.  I was in the electric utility industry.

23       Q.  Can you explain to me what that entails?

24  I'm not very familiar with that industry.

25       A.  It entails a lot of different facets of

1 electrical generation and distribution.

2        Q.   And what was your role?

3        A.   Energy generation.

4        Q.   And what would you do as an energy

5 generator?

6        A.   I would operate a power plant.

7        Q.   A nuclear power plant?

8        A.   No.

9        Q.   What kind?

10        A.   A fossil fuel plant.

11        Q.   And where was that?

12        A.   Las Vegas.

13        Q.   And what company was that?

14        A.   Originally -- or initially it was a

15 company called Reliant Energy, and then it was for

16 a company called Nevada Power Company, also called

17 NV Energy; Nancy Victor Energy.

18        Q.   Did you work at any other energy

19 companies?

20        A.   Yes.

21        Q.   What were they?

22        A.   A company called American Electric Power.

23        Q.   And where was that headquartered, or

24 where did you work for them?  Where were you when

25 you worked for them?

Case 9:21-cv-00047-DWM   Document 53-14   Filed 02/09/23   Page 20 of 83

1          A.   In Michigan.

2          Q.   And what did you do for American Electric

3    Power?

4          A.   I was an electrician.

5          Q.   And what did you do after you worked at

6    American Electric Power?

7          A.   I worked for Reliant Energy, NV Energy.

8          Q.   So you work at American Electric Power

9    before you worked at Reliant Energy and Nevada

10   Power Company?

11         A.   Correct.

12         Q.   Okay.  And what were your duties at

13   Nevada Power Company?

14         A.   The same as at Reliant Energy, operating

15   power plants, operating and supervising.

16         Q.   So did you supervise other people?

17         A.   I did.

18         Q.   How many?

19         A.   I don't know the exact number.

20         Q.   Ballpark.

21         A.   15.

22         Q.   And after you left -- Have you left

23   Nevada Power Company?

24         A.   I'm sorry, I didn't hear you.

25         Q.   Do you still work at Nevada Power

1  Company?

2       A.   No.

3       Q.   What did you do after you left Nevada

4  Power Company?

5       A.   Nothing, I quit.

6       Q.   And why did you quit?

7       A.   Because I didn't like it anymore.

8       Q.   Okay.  And what do you currently do to

9  make money?

10      A.   Why is that relevant to this case?

11      Q.   This is an income tax case.

12      A.   Yes, but it covers -- the affected years

13 are 2004 to 2017.

14      Q.   When did you leave Nevada Power Company?

15      A.   2012 -- no, 2011.  I'm sorry.

16      Q.   Okay.  And then what did you do after

17 Nevada Power Company?

18      A.   I traveled a little bit.

19      Q.   Did you work after you left Nevada Power

20 Company?

21      A.   On a very limited basis, yes.

22      Q.   Can you explain what that means.

23      A.   I worked for a place called North

24 American Energy Services as a contractor.

25      Q.   And what would you do as a contractor

Case 9:21-cv-00047-DWM   Document 53-14   Filed 02/09/23   Page 22 of 83

1  there?

2        A.   Similar stuff as I did at Nevada Power

3  Company.   I also wrote procedures.

4        Q.   What kind of procedures?

5        A.   Power plant operating procedures and

6  maintenance procedures.

7        Q.   Have you contracted for any other

8  organizations or entities?

9        A.   Yes.

10        Q.   What are they?

11        A.   During the affected years, there was one

12  company called Absolute Consulting, but that was

13  for a very short time.   And then there was another

14  company out of Houston, Texas, I don't remember

15  their name, though, but it was for a very short

16  time.

17        Q.   Have you consulted anywhere else?

18        A.   During the affected years, no.

19        Q.   Are you married?

20        A.   (No audible answer.)

21        Q.   Mr. Millett?

22        A.   Yes, ma'am.

23        Q.   Are you married?

24        A.   Oh, I answered that question.   I thought

25  you heard.

1            No, I am not.

2       Q.  Okay.  I did not hear that.

3            Have you ever (audio feed breaks up)?

4       A.  I'm sorry, what?

5       Q.  Have you ever been married?

6       A.  Yes.

7       Q.  All right.  To whom?

8       A.  Why is that relevant to this case?

9       Q.  This is an income tax case.  Your income
10  and your taxes and when you file taxes, it changes
11  often if you're filing married or filing jointly,
12  it can have an impact on your income and what you
13  report.

14       A.  I will say, during the affected years, I
15  was married to one person, but we were divorced.

16       Q.  And who was that?

17       A.  Her name is Annette Millett, and she is
18  deceased.

19       Q.  Can you spell Annette, please.

20       A.  Sure.  A-n-n-e-t-t-e.

21       Q.  From your viewpoint, what is the nature
22  of this case?

23       A.  How's that question relevant?

24       Q.  You can answer the question.

25       A.  How's that question relevant to this

Case 9:21-cv-00047-DWM   Document 53-14   Filed 02/09/23   Page 24 of 83

1  case?

2       Q.   It could be a potential defense.

3       A.   I will not answer it.

4       Q.   Did you file federal tax returns with the

5  IRS for 2004?

6       A.   I will have to object to that question as

7  the question violates my Fifth Amendment right,

8  including, but not limited to, being compelled to

9  be a witness against myself as an answer may be

10 used to criminally prosecute me.

11      Q.   I just want to confirm that you're

12 pleading the Fifth for that question?

13      A.   Yes, I am.

14      Q.   Did you file a federal tax return for

15 2005?

16      A.   Objection, this question violates my

17 Fifth Amendment right, including, but not limited

18 to, being compelled to be a witness against myself

19 as my answer may be used to criminally prosecute

20 me.

21      Q.   And I just want to double-check that you

22 are pleading the Fifth to that question?

23      A.   Yes, I am.

24      Q.   Did you file federal tax returns for

25 2006?

Case 9:21-cv-00047-DWM   Document 53-14   Filed 02/09/23   Page 25 of 83

1        A.   Objection, this question violates my

2   Fifth Amendment right, including, but not limited

3   to, being compelled to be a witness against myself

4   as my answer may be used to criminally prosecute

5   me.

6        Q.   So, Mr. Millett, I just am going to let

7   you know -- and this is not me giving legal advice,

8   but I know that you're pro se and you're not

9   represented by anyone, so I thought that you should

10   know that in the 9th Circuit, which Montana lies

11   in, pleading the Fifth entitles the United States

12   to draw an adverse inference from your question

13   {sic}.

14        So in the 9th Circuit, in S.E.C. versus

15   Colello, 139 F.3d. 674, page number 677, 9th

16   Circuit 1998, the direct quote is, Parties are free

17   to invoke the Fifth Amendment in civil cases, but

18   the court is equally free to draw adverse

19   inferences from their failure of proof.

20        A.   Duly noted.

21        Q.   Did you file federal tax returns for

22   2007?

23        A.   This question violates my Fifth Amendment

24   right, including, but not limited to, being

25   compelled to be a witness against myself as my

1 answer may be used to criminally prosecute me.

2      Q.  Did you file federal tax returns for

3 2008?

4      A.  This question violates my Fifth Amendment

5 right, including, but not limited to, being

6 compelled to be a witness against myself as my

7 answer may be used to criminally prosecute me.

8      Q.  Did you file federal tax returns for

9 2009?

10      A.  This question violates my Fifth Amendment

11 right, including, but not limited to, being

12 compelled to be a witness against myself as my

13 answer may be used to criminally prosecute me.

14      Q.  Did you file federal tax returns for

15 2010?

16      A.  Yes, I did.

17      Q.  Did you file federal tax returns for

18 2011?

19      A.  Objection, this question violates my

20 Fifth Amendment right, including, but not limited

21 to, being compelled to be a witness against myself

22 as my answer may be used to criminally prosecute

23 me.

24      Q.  Did you file federal tax returns for

25 2012?

Case 9:21-cv-00047-DWM   Document 53-14   Filed 02/09/23   Page 27 of 83

1       A.   Objection, this question violates my

2  Fifth Amendment right, including, but not limited

3  to, being compelled to be a witness against myself

4  as my answer may be used to criminally prosecute

5  me.

6       Q.   Did you file federal tax returns for

7  2013?

8       A.   Yes, I did.

9       Q.   Did you file federal tax returns for

10 2014?

11      A.   Yes, I did.

12      Q.   Did you file federal tax returns for

13 2015?

14      A.   Yes, I did.

15      Q.   Did you file federal tax returns for

16 2016?

17      A.   Yes, I did.

18      Q.   And did you file federal tax returns for

19 2017?

20      A.   Yes, I did.

21      Q.   Who prepared your federal tax returns?

22      A.   I did.

23      Q.   Did anyone help you?

24      A.   No.

25      Q.   Have you paid your federal tax liability

1   since 2004?

2        A.   Objection, this question violates my

3   Fifth Amendment right, including, but not limited

4   to, being compelled to be a witness against myself

5   as my answer may be used to criminally prosecute

6   me.

7        Q.   Did you receive any notices from the IRS

8   regarding your federal income tax deficiency?

9        A.   Be more specific, please.

10        Q.   Did you ever receive a notice of

11   deficiency from the IRS?

12        A.   No, I -- to my recollection, no.

13        Q.   Did you ever receive a notice of intent

14   to levy from the IRS?

15        A.   To my recollection, no.

16        Q.   Have you ever made any offers with the

17   IRS to pay your federal income tax liability?

18        A.   Yes, I have.

19        Q.   And what was that?

20        A.   I attempted an offer in compromise in

21   2019.

22        Q.   And what happened with that?

23        A.   They rejected it.  And the reason they

24   rejected it is because they said that I didn't -- I

25   had not filed any returns for a certain number of

Page 29

UNITED STATES OF AMERICA v. MILLETT, et al.    Case 9:21-cv-00047-DWM    Document 53-14    Filed 02/09/23    Page 29 of 83    THOMAS S. MILLETT

1/4/2023

1 years, a couple of years, I don't remember exactly

2 which years.

3        Q.   Did you file those returns?

4        A.   I did.

5        Q.   And what years were they referring to?

6        A.   You know, I don't remember off the top of

7 my head exactly which years, I would have to look

8 at my records.

9        Q.   Did you file those returns after you

10 submitted the offer in compromise?

11        A.   Yes, I submitted a second offer in

12 compromise.

13        Q.   When did you submit the second offer in

14 compromise?

15        A.   I believe it was sometime in January of

16 2020.

17        Q.   And what happened with that second offer

18 in compromise?

19        A.   That second offer in compromise was

20 rejected.

21        Q.   Did the IRS tell you on what grounds it

22 was rejected?

23        A.   I'm sure they did, I don't remember.  I

24 would have to look at my records.

25        Q.   Have you submitted any other offers in

1 compromise with the IRS?

2      A.  No.

3      Q.  Have you submitted any installment

4 agreements with the IRS?

5      A.  No.

6      Q.  Have you made any request to the IRS for

7 currently not collectable status?

8      A.  I do not recall.

9      Q.  Have you submitted any other offers or

10 compromises or any -- or anything of the sort with

11 the IRS?

12      A.  Are you talking outside of the two other

13 compromises?

14      Q.  Yes, outside of the ones we already

15 discussed.

16      A.  I don't recall.

17      Q.  Okay.  In the defenses you submitted with

18 the court -- Excuse me.  You listed several

19 defenses, so I would just like to walk through

20 those right now.

21          The first defense that you listed was

22 that United States failed to follow required legal

23 and administrative steps, what was your basis for

24 that defense?

25      A.  You know, to me, that sounds like an

1 irrelevant question at this point, why you would be

2 asking my strategy?

3          Q.  You submitted this to the court, it's far

4 from irrelevant, it's a defense that you are making

5 in the case that's before us and why we're having

6 this deposition.

7          A.  Can you repeat the question?

8          Q.  In one of the defenses that you listed in

9 your answer, you stated that the United States

10 failed to follow required legal and administrative

11 steps, what is your basis for this defense?

12          A.  The basis would be they didn't follow the

13 legal and administrative steps.

14          COURT REPORTER:  I'm sorry, sir.  Say

15 that again, please.

16          A.  So I would say that my defense is that

17 they did not -- the U.S. government did not follow

18 the legal and administrative steps in collecting

19 tax.

20          Q.  (BY MS. BISSELL)  And what legal steps

21 are you referring to?

22          A.  Well, they're supposed to give me a

23 notice of deficiency.  I haven't received a notice

24 of deficiency.

25          Q.  Anything else?

1      A.  That's sufficient.

2      Q.  What administrative steps?

3      A.  I can't recall at this time.

4      Q.  Do you have any documentation or proof to

5  support this defense?

6      A.  Well, I have the Internal Revenue Code

7  and what it says.

8      Q.  Do you have any further documentation to

9  support this defense?

10     A.  Not at this time.

11     Q.  Another defense that you listed in your

12 answer was that the assessed tax penalties and

13 interest is baseless and arbitrary, what is your

14 basis for this defense?

15     A.  Because nothing was ever proven as to

16 where those numbers come from, so I can only guess

17 that they came out of the thin, blue sky.

18     Q.  And what's your basis that -- for stating

19 that these numbers were not proven?

20     A.  Because there's no Internal Revenue Code

21 sections saying where they came from, how they were

22 calculated.

23     Q.  Do you have any documentation or other

24 proof for this defense?

25     A.  Not at this time.

1    Q.   The last defense that you listed in your
2  answer was that the IRS obtaining documents was
3  done illegally and without proper notification,
4  what is your basis for this defense?
5    A.   The basis would be I was supposed to be
6  given notification that information was being
7  sought from third parties, and I never received
8  that.
9    Q.   Do you have anything else, any other
10 documentation of proof?
11   A.   No.
12   Q.   I'm sorry, did you say no?
13   A.   Yes, ma'am.  No.
14   Q.   What was your address when you worked in
15 Las Vegas?
16   A.   I lived in a few different places in
17 Las Vegas over the years.
18   Q.   All right.  What's the address of the
19 first place you lived?
20   A.   (Witness laughs.)  I do not recall that.
21 Hold on.  I do believe it was 9000 South Las Vegas
22 Boulevard.  It was an apartment, but don't ask me
23 the apartment number.
24   Q.   And what was the second place you lived
25 in Las Vegas?

Case 9:21-cv-00047-DWM   Document 53-14   Filed 02/09/23   Page 34 of 83

1      A.  I don't remember the address.  It was

2  somewhere in Henderson -- Henderson, Nevada.

3      Q.  Is that by Las Vegas?

4      A.  Yes, it's a city next to Las Vegas.

5      Q.  Do you remember the street name?

6      A.  I do not.

7      Q.  And what was another address you lived at

8  when you lived in the area?

9      A.  I lived in another apartment in

10  Las Vegas, but I don't remember the street.

11         MS. BISSELL:  Why don't we take a

12  ten-minute break and reconvene at -- there's so

13  many different time zones going right now --

14  10:00 a.m. Mountain Time.

15         Mr. Millett, you can please -- don't hang

16  up the phone, but please do mute yourself.

17         THE WITNESS:  Okay.

18         MS. BISSELL:  Okay.  We'll reconvene at

19  10:00 a.m. Mountain Time.

20         THE WITNESS:  Very well, 10:00 a.m.

21  Mountain Time.

22         MS. BISSELL:  Yes, okay.

23         And we can go off the record, Debi.

24         (Whereupon, the proceedings were in

25  recess at 9:48 a.m. MST and subsequently reconvened

1 at 10:00 a.m. MST, and the following proceedings

2 were entered of record:)

3       Q.  (BY MS. BISSELL)  I'm going to start off

4 by asking a few more questions.

5            Mr. Millett, how long have you known

6 Ms. McLaughlin?

7       A.  13 years, I believe.

8       Q.  And when did you -- or where did you

9 meet?

10      A.  Las Vegas.

11      Q.  And how did you meet?

12      A.  On a golf course.

13      Q.  And what was the nature of your

14 relationship when you met?

15      A.  It was actually a blind date.

16      Q.  It was a blind date?

17      A.  Yes.

18      Q.  And you went golfing on your blind date?

19      A.  Yes.

20      Q.  That's actually a great idea.

21            And what kind of relationship came from

22 that blind date?

23      A.  We became a couple.

24      Q.  Okay.  Are you and Ms. McLaughlin still a

25 couple?

Case 9:21-cv-00047-DWM   Document 53-14   Filed 02/09/23   Page 36 of 83

1     A.   Not in the sense of a romantic couple.

2  She's my best friend.

3     Q.   She's your best friend, can you describe

4  what you mean by that?

5     A.   How about this:  She's my only friend.

6     Q.   How long did your romantic relationship

7  last?

8     A.   All the way up until August of 2012.

9     Q.   What happened in August of 2012?

10    A.   Let me give you the background.

11    Q.   Go for it.

12    A.   So in May of 2011, I decided to quit my

13 job, and I did that because I didn't like it

14 anymore, working in Nevada, and I wanted to travel.

15 And I convinced Ms. McLaughlin to quit her job and

16 travel with me, so she did.  So we traveled the

17 western United States and we came through Montana

18 in the -- I think it was September of 2011.  We

19 came through northwest Montana and she decided she

20 wanted to live here.  And at the time, I said okay.

21        So we eventually found 4 acres of land to

22 purchase, and we did, and I think that the record

23 shows that that was in March of 2012, I think.  So

24 we started developing the property, you know,

25 cleaning it up.  And in August, I decided I didn't

1 want to live in Montana anymore, so I told her I

2 didn't want to do that, you know, I didn't want to

3 live here anymore, I wanted to travel some more.

4 So I quitclaimed my interest to the property over

5 to her, because I felt bad that I had made her

6 quit -- you know, encouraged her to quit her job

7 and travel with me, but then she wanted to settle

8 down and I didn't.  So to make it up to her, I

9 quitclaimed my part of the property over to her and

10 that's how that happened.  And then I left --

11     Q.  And when --

12     A.  -- I went back to Las Vegas.

13     Q.  I'm sorry, I interrupted you.

14         You left and you went back to Las Vegas?

15     A.  I did.

16     Q.  And when was that?

17     A.  That was at the end of Aug -- no, end of

18 September 2012.

19     Q.  And how long did you stay in Las Vegas?

20     A.  A little over three months.

21     Q.  And then where did you go?

22     A.  I eventually made my way back to Montana

23 on a part-time basis.

24     Q.  And where in --

25     A.  And at the same time, I was contracting

Case 9:21-cv-00047-DWM   Document 53-14   Filed 02/09/23   Page 38 of 83

1 for that organization called North American Energy

2 Services.

3     Q.   And where in Montana did you live?

4     A.   I stayed here on the property when I was

5 in Montana.

6     Q.   And how long have you been in Montana?

7     A.   Be more specific.

8     Q.   You said, just to recap, you went back to

9 Las Vegas in 2012 and you stayed in Vegas for three

10 months, then you returned to Montana, to Marion,

11 Montana.  You stayed at the property, at 775

12 Pleasant Valley Road; is that correct?

13     A.   That's correct, that's where I stay when

14 I come to Montana.

15     Q.   And how often do you come to Montana?

16     A.   It all depends on where I get sent by

17 this company.

18     Q.   So are you currently working for North

19 American Energy Service?

20     A.   No.

21     Q.   You just stated that it depends on where

22 the company sends you in terms of how long you stay

23 in Montana, in Marion?

24     A.   So I was referring to when I came back at

25 the end of 2012 -- actually, January of 2013 I came

1 back to Montana --

2      Q.  And how long did you stay --

3      A.  -- and I worked for that company on and

4 off for the next three or four years.

5      Q.  And how often would you come back to

6 Marion?

7      A.  It depends.  Sometimes I'm sent away for,

8 you know, two months at a time, three months at a

9 time.  I come back maybe a month or two months and

10 I go away again.  I come back and I go away.  And

11 so it all depends.

12      Q.  So these periods when you're away, you

13 are sent away by your job?

14      A.  Yes.

15      Q.  And then when that job is done, you come

16 back to Marion; is that correct?

17      A.  That's correct -- well, not all the time.

18 Sometimes I'll go visit other friends around the

19 country, but generally I will make my way back to

20 Montana.

21      Q.  Do you consider Marion, Montana to be

22 your home?

23      A.  I consider it to be my home of record.  I

24 consider anyplace my home is where I lay my head.

25      Q.  How often do you see Ms. McLaughlin?

Case 9:21-cv-00047-DWM   Document 53-14   Filed 02/09/23   Page 40 of 83

1       A.   Can you be more specific, like a time

2  frame?

3       Q.   When you are not in -- when you're not

4  traveling for work, how often do you see

5  Ms. McLaughlin?

6       A.   That's very subjective, because different

7  assignments are different lengths, so I can't

8  really give you a definitive answer on that.

9       Q.   Well, for example, for me, when I'm not

10 traveling for work, I see my husband every day, so

11 that's how I would answer that question.  So how

12 would you answer that question?  When you're not

13 traveling for work, how often do you see

14 Ms. McLaughlin?

15      A.   When I'm in Montana, I see her every day.

16      Q.   How often do you speak to Ms. McLaughlin?

17      A.   I will speak to Ms. McLaughlin -- Now,

18 are you talking when I'm here in Montana or away?

19      Q.   When you're away.

20      A.   When I'm away, it's probably at least

21 every other day, because we are good friends.

22      Q.   Do you frequently -- so that was slightly

23 a bad question on my part.  I said how often do you

24 speak with her.  When you answered, were you

25 thinking, speak with her over the phone, or speak

1 with her via text, or, like, what encompassed your

2 definition of speaking to her at least every other

3 day?

4      A.  I would have to say it's either one or

5 the other every other day, it could be less, I'm

6 just guessing.

7      Q.  And when you come back to Marion, you

8 live at 775 Pleasant Valley Road with

9 Ms. McLaughlin?

10      A.  I live on the property in a trailer when

11 I'm here in Montana.

12      Q.  So the property at issue here is located

13 at 775 Pleasant Valley Road in Marion, Montana; is

14 that correct?

15      A.  Correct.

16      Q.  Okay.  You stated previously that you

17 were on a road trip with Ms. McLaughlin when you

18 decided to purchase the property.  How did you find

19 this specific piece of property?

20      A.  Just started looking around, talking to

21 Realtors and looking for property the normal way.

22      Q.  And why did you choose Marion?

23      A.  I didn't choose Marion, she did.

24      Q.  Where would you have chosen?

25      A.  Las Vegas.

Case 9:21-cv-00047-DWM   Document 53-14   Filed 02/09/23   Page 42 of 83

1    Q.   And what was your vision for the property

2  when you bought it, like, what were your goals?

3    A.   I really didn't have any goals, it was

4  all her, she wanted the property, so I said yes.

5    Q.   Who paid for the property?

6    A.   I'm sorry, I didn't hear you.

7    Q.   Who paid for the property?

8    A.   She paid for the property.  Oh, are you

9  talking -- we both paid for the property.

10    Q.   How did you split the payment?  Was it

11  50/50?  Was it not 50/50?

12    A.   It was 50/50.

13    Q.   Did anyone else chip in for the property?

14    A.   No.

15    Q.   Did you get a mortgage on the property?

16    A.   No.

17    Q.   Can you describe what the property looked

18  like when you first bought it?

19    A.   It was a raw piece of land.

20    Q.   When you say raw piece of land, you mean

21  that there were no buildings or improvements on it?

22    A.   That's correct.

23    Q.   What did you do to the property after you

24  bought it?

25    A.   We cleared the property, we had a well

1 drilled, and we had electric power run to the

2 property.

3      Q.  When you say you cleared the property, do

4 you mean you cleared it of trees, bushes?

5      A.  Yeah, I helped her clear the property of

6 trees and bushes.

7      Q.  What other maintenance did you do?

8      A.  I think that's it.  I can think of

9 nothing else.

10      Q.  So you drilled a well; correct?

11      A.  (No audible answer.)

12      Q.  Mr. Millett?

13      A.  Yes, I'm here.

14      Q.  You drilled a well; is that correct?

15      A.  Well, I didn't drill it personally, we

16 hired someone.

17      Q.  Okay.  And then did you personally clear

18 the property?

19      A.  I contributed to clearing some of the

20 property, yes.

21      Q.  How did you do that?

22      A.  With a chainsaw, with my labor.  We

23 also -- there was also a gentleman that we hired

24 that had, you know, mechanical equipment, but I

25 really didn't get involved with any of that.

Case 9:21-cv-00047-DWM   Document 53-14   Filed 02/09/23   Page 44 of 83

1 Ms. McLaughlin is the one who hired him to do that.

2    Q.  Aside from the clearing, having a well

3 drilled -- Well, scratch that.

4        Was the goal to build a house on the

5 property?

6    A.  Originally, yes, that was the goal.

7    Q.  Is there currently a house built on the

8 property?

9    A.  Yes, there is.

10   Q.  When did construction begin on the

11 property?

12   A.  What do you mean construction?  Define

13 that.

14   Q.  When did construction to build a house

15 begin on the property?

16   A.  Well, the reason I asked that question is

17 it's like a two-stage thing.  So we started

18 clearing, you know, doing the clearing and the well

19 and everything in the summer of 2012, but I

20 don't -- the actual house building, I think that

21 was in 2013 sometime.

22   Q.  So around -- to the best of your

23 recollection, around 2013, for example, that's when

24 the foundation was poured?

25   A.  Yes, I believe so.  I think it was in --

1 it had to be, obviously, after the spring breakup.

2 I think it was in July; June or July.

3          Q.  And who poured the foundation?

4          A.  I don't know, she hired somebody to pour

5 it, I don't know who that was.

6          Q.  What about the framing, do you know who

7 did the framing?

8          A.  The framing was done by a gentleman -- an

9 older gentleman in the area, and I helped him do

10 some of the framing.

11          Q.  I was gonna say, that's hard work for an

12 older gentleman to do by himself.

13          A.  Yeah, it was kind of hard for me, too.

14          Q.  Yeah, it's not easy work.

15               What about for drywall?

16          A.  Going on my recollection, I think

17 Ms. McLaughlin would know a lot better than I

18 would, but I think she hired that out to somebody

19 else, because that's tough work, too.  I know I

20 didn't do it.

21          Q.  What about fixtures?

22          A.  What kind of fixtures?  Like plumbing?

23          Q.  Like fixtures, doorknobs, kind of that

24 finishing work that gets done on houses when

25 they're being newly constructed.

Case 9:21-cv-00047-DWM   Document 53-14   Filed 02/09/23   Page 46 of 83

1        A.  Oh, she did a lot of it, she did most of

2  that.  She's pretty handy.

3        Q.  What about the electricity?  I know that

4  you had electricity ran out to the house, was there

5  an electrician?

6        A.  Yeah, me --

7        Q.  Okay.

8        A.  -- I did the electric.

9        Q.  Of course, with your background, I assume

10  that that's apparently natural.

11            What about the plumbing?  I know that you

12  said you dug a well --

13        A.  The plumber -- I believe that she hired a

14  plumber, she had a friend that was a plumber and

15  she kind of sort of hired him to help out with the

16  plumbing.  I know she got in there and did a lot of

17  the plumbing, too, but I didn't do any plumbing.

18        Q.  What about painting the interior of the

19  house?

20        A.  She did all that.

21        Q.  And the siding?

22        A.  I believe she hired somebody for that,

23  because that's tough work, too.

24        Q.  What about landscaping?

25        A.  She did any landscaping.  That's what she

Case 9:21-cv-00047-DWM   Document 53-14   Filed 02/09/23   Page 47 of 83

1  did in Las Vegas.

2       Q.   So Ms. McLaughlin is a landscaper by

3  trade?

4       A.   No, not really.  She worked for the

5  county as a parks person, so she has that skill.

6       Q.   And remind me what the county is for

7  Las Vegas; Carson?

8       A.   Clark County.

9       Q.   Clark, thank you.

10           Does the house have a garage?

11      A.   It does.

12      Q.   And who built that?

13      A.   Some company, I don't remember what the

14  company was called.

15      Q.   And does the house have a driveway?

16      A.   It's got a gravel/dirt driveway.

17      Q.   And who laid the gravel?

18      A.   The person that did a lot of the

19  clearing, he's a contractor, he has the big

20  machinery.

21      Q.   I thought that you -- you said that you

22  contributed to the clearing?

23      A.   My labor, yes.

24      Q.   Uh-huh.  So did you hire someone to also

25  help with the clearing?

1        A.   I never hired anybody.  If anybody was

2   hired, then Ms. McLaughlin hired them.  And if my

3   recollection is clear, a lot of her payment was in

4   barter, she would -- she actually worked for the

5   contractor on and off.

6        Q.   Who paid for building materials?

7        A.   Ms. McLaughlin did.

8        Q.   Did you pay for building materials?

9        A.   It's possible I paid for some, I don't

10  remember how much.

11       Q.   Did you contribute anything financially

12  to the construction of the house?

13       A.   Yes, but I don't know how much.

14       Q.   Can you ballpark for me the amount of

15  money that you believe that you spent in the

16  preconstruction maintenance of the property,

17  clearing, getting electricity run out there, I

18  forgot the third one, getting the well drilled, how

19  much you paid for that, how much you paid for

20  materials, and how much you paid for construction,

21  can you give me a ballpark estimate of how much you

22  believe that you spent on the property for the

23  construction of the house, beginning to end?

24       A.   That's a tough question.  Ballpark,

25  anywhere from maybe 15,000 to 20,000.

Case 9:21-cv-00047-DWM   Document 53-14   Filed 02/09/23   Page 49 of 83

1   Q.   Can you ballpark what you believe was the
2 total cost of the house?
3   A.   I cannot even guess about that.
4   Q.   When was construction completed on the
5 house?
6   A.   I would have to guess.  I'm thinking
7 2015.
8   Q.   Do you remember what month?
9   A.   I do not.
10   Q.   Where did Ms. McLaughlin live when the
11 house was being built?
12   A.   On the property.
13   Q.   When you were back in Montana, where did
14 you live when the house was being built?
15   A.   On the property.
16   Q.   What utilities currently service the
17 property?
18   A.   Electricity and cable or broadband.
19   Q.   Does that cover internet?
20   A.   Yeah, it's just a phone line for
21 internet.
22   Q.   So your internet is dialup internet, or
23 does the broadband encompass wireless, cable, is it
24 one of those bundles?
25   A.   It's the same as everything else.  It

Case 9:21-cv-00047-DWM   Document 53-14   Filed 02/09/23   Page 50 of 83   THOMAS S. MILLETT

1 could be bundled, I guess, but she only has

2 internet, she only bought the internet service from

3 CenturyLink.

4      Q.  Does gas service the house?

5      A.  No, there's no natural gas here.

6      Q.  Okay.  Do you have garbage pickup?

7      A.  No, we're too far away from town for

8 that.

9      Q.  And I assume that encompasses recycling

10 pickup as well, there isn't any?

11      A.  Correct.  Well, there's no -- Flathead

12 County, to my recollection, does not have recycling

13 service.

14      Q.  Yeah, I think that's right.

15          When you are back in Marion, what is your

16 day-to-day like in caring for the home?

17      A.  I will shovel snow, if necessary, clean

18 up after myself, do my laundry; just normal things.

19      Q.  What about when maintenance needs to be

20 done on the home, like the dishwasher -- I don't

21 know if there's a dishwasher, but, for example, if

22 the dishwasher breaks --

23      A.  Well, Ms. McLaughlin is pretty handy, she

24 can fix most anything, and if she can't, then she

25 probably will hire it out to somebody.

1    Q.   So you'll shovel snow, you'll clean,
2 you'll do laundry, there's no trash pickup.  I'm
3 doing a list of chores in my head.  Is there
4 anything else?
5    A.   Well, I do take the trash to the dump
6 when I'm here on occasion.
7    Q.   And you pay the electric bill; is that
8 correct?
9    A.   I do.
10    Q.   Do you pay any other bills?
11    A.   No, not that I can remember.  I might
12 have paid for propane once or twice, but that's
13 about all I can think of.
14    Q.   What's the propane used for?
15    A.   Propane is used for the water heater,
16 yeah, the water heater, that's about it.
17    Q.   All right.  And then --
18    A.   Well, and there's also a trailer on the
19 property, so the heater in the trailer and the
20 stove -- obviously the stove in the house and the
21 trailer.
22    Q.   Okay.  And do you pay any water bills or
23 is the whole property serviced from the well?
24    A.   The whole property is serviced from the
25 well.

Case 9:21-cv-00047-DWM   Document 53-14   Filed 02/09/23   Page 52 of 83

1       Q.   Okay.  Has the house needed any

2  improvements since it was built?

3       A.   No.

4       Q.   Have you added any improvements since it

5  was built?

6       A.   No, I haven't.  I don't think

7  Ms. McLaughlin has, either.

8       Q.   Okay.  What does Ms. McLaughlin do to

9  care for the home?

10      A.   That's kind of a strange question.  I

11  guess she cleans it, does the dishes.

12      Q.   So you generally take care of the chores

13  in your household?

14      A.   She takes care of the house, I take care

15  of the trailer.

16      Q.   And what do you currently do for work?

17      A.   Give me a second to answer that.  I'm

18  still an independent contractor.

19      Q.   Who do you contract for -- or with, I

20  should say?

21      A.   Different businesses.

22      Q.   Such as?

23      A.   I don't think this is relevant to the

24  years at issue, what I do now, so I will not answer

25  that question.

Case 9:21-cv-00047-DWM   Document 53-14   Filed 02/09/23   Page 53 of 83

1    Q.  Mr. Millett, I think that at this point

2 it would behoove us to call Judge Molloy.  You

3 typically have to answer questions when they're

4 asked to you in a deposition.  So I think I'm going

5 to call him on the record and see how he would like

6 us to move forward with this deposition.

7              MS. BISSELL:  Debi, I'm about to call

8 Judge Molloy's chambers.

9              COURT REPORTER:  Do you want to go off

10 the record for a second?

11             MS. BISSELL:  Sure, let's go off the

12 record for a second.

13             (Discussion held off the record.  Phone

14 call with Judge Molloy's assistant Nicole occurs,

15 but is not taken down stenographically.)

16             MS. BISSELL:  Debi, can we go back on the

17 record?

18             THE WITNESS:  Ms. Bissell, can we take a

19 five-minute break so I can use the restroom?

20             MS. BISSELL:  Once I recap the phone

21 call.

22             THE WITNESS:  Okay.

23             MS. BISSELL:  Counsel for the United

24 States just called the chambers of Judge Molloy to

25 discuss defendant Tom Millett's hesitance in

Case 9:21-cv-00047-DWM   Document 53-14   Filed 02/09/23   Page 54 of 83

1 answering questions based off of relevance and also

2 pleading the Fifth Amendment in order to avoid

3 answering questions.

4        The law clerk for Judge Molloy consulted

5 with Judge Molloy and suggested that the United

6 States file a motion under the Federal Rules of

7 Civil Procedure 37.

8        All right.  Let's have a five-minute

9 break and reconvene at, I guess, 11:55, is that

10 right?  10:55?  Sorry.

11        COURT REPORTER:  That'll work.

12        MS. BISSELL:  I'm sorry.  All right, so

13 let's go off the record and reconvene at 10:55.

14        THE WITNESS:  Okay, thank you.

15        (Whereupon, the proceedings were in

16 recess at 10:46 a.m. MST and subsequently

17 reconvened at 10:54 a.m. MST, and the following

18 proceedings were entered of record:)

19        MS. BISSELL:  Yeah, Debi, let's go back

20 on the record.

21        COURT REPORTER:  All right, we're back on

22 the record.

23    Q.  (BY MS. BISSELL)  Go ahead, Mr. Millett,

24 you were saying that you had something to offer me?

25    A.  Yes.  So the reason that I am objecting

Case 9:21-cv-00047-DWM   Document 53-14   Filed 02/09/23   Page 55 of 83

1  to some of these question is I truly believe that

2  some of them are irrelevant, however, from my

3  understanding of depositions, I can object, but for

4  the most part, I have to answer the question; would

5  you agree with that?

6        Q.  For the most part, you have to answer the

7  question, yes.

8        A.  So what I will do is -- see, I do not

9  want to relinquish my right to object, even at a

10 later date, that's why I'm objecting.  What I will

11 do is, if I feel that it is -- that I can object, I

12 will object, but I will answer the question for

13 you; is that satisfactory to you?  Because that

14 way, I feel that I retain my right to object at a

15 later date.  Is that okay?

16       Q.  Yes, that is the standard and the law.

17       A.  Okay.

18       Q.  I will still be filing a motion under

19 Rule 37, however.

20       A.  And what will that entail?

21       Q.  I'm not completely sure yet.  We will be

22 holding this deposition open so we can continue it

23 with exhibits at a later date, and Rule 37 does

24 compel that, so --

25            Have you -- to go back to asking

1 questions and answering questions, what is National

2 Financial Services?

3       A.  I do not know, unless it's something to

4 do with a mortgage I had in Las Vegas.

5       Q.  Did you own property in Las Vegas?

6       A.  I was buying a house in Las Vegas.

7       Q.  Did you buy a house in Las Vegas?

8       A.  I never completed the payment of it, but

9 it was foreclosed on me.

10      Q.  And what was the address of that house?

11      A.  I don't remember the street number.  The

12 street name, I believe, was Glenna Lodge.

13      Q.  And previously when I asked you your

14 addresses in Las Vegas, that did not come up; is

15 that correct?

16      A.  You didn't continue asking, you stopped

17 at the third of four houses or places that I

18 stayed.

19      Q.  Where else did you live in Las Vegas?

20      A.  Just that one, at that place.  I lived in

21 three apartments and then one house.

22      Q.  Anywhere else?

23      A.  No.

24      Q.  When was your house foreclosed on?

25      A.  I don't remember the date.  I don't know

UNITED STATES OF AMERICA v. MILLETT, et al.  1/4/2023                    THOMAS S. MILLETT

1 the year, it could've been 2012, 2013, something

2 like that.

3        Q.  And why -- Who foreclosed on your house?

4        A.  I assume the mortgage company did.

5        Q.  And what mortgage -- Excuse me.  What

6 mortgage company was that?

7        A.  I do not know, that was so long ago.

8        Q.  So the house was on Glenna Lodge in

9 Las Vegas, Nevada?

10        A.  Yes.

11        Q.  Did you pay your mortgage payments?

12        A.  At first, yes.

13        Q.  When did you stop making your mortgage

14 payments?

15        A.  When I quit my job and left Las Vegas.

16 Maybe -- You know, that was so long ago I could've

17 continued paying for a little bit, but I don't

18 remember exactly.

19        Q.  Have you ever received income from

20 National Financial Services?

21        A.  Not to my knowledge.  If that's what I

22 think it is, it's a mortgage company.

23        Q.  What is RE Power Operations?

24        A.  I would have to say that's with Reliant

25 Energy Power Operations.  When I said earlier that

1  I worked for a company called Reliant Energy, it's

2  probably them.

3      Q.  So you received income from Reliant

4  Energy?

5      A.  Yes, I did work for them when I was in

6  Las Vegas.

7      Q.  And remind me what year you stopped

8  working for Reliant Energy.

9      A.  Reliant Energy -- So the sequence of

10 events was, I moved to Las Vegas in 2002 and worked

11 for Reliant Energy, and then sometime around 2008

12 or 2009, the power plant that I was working at,

13 that was owned by Reliant Energy, sold it to Nevada

14 Power, or NV Energy, as they're known today.  So we

15 transferred from one company to the other, same

16 facility, different ownership, in around 2008/2009.

17     Q.  Okay.  And then -- So it changed over to

18 Nevada Power Company?

19     A.  Yes, Nevada Power Company assumed

20 ownership of that power plant that I was working

21 at.

22     Q.  And then you worked at Nevada Power

23 Company until when?

24     A.  May of 2011 was when I quit.

25     Q.  But you didn't leave Las Vegas until 2002

1  {sic}, correct -- or 2012?

2      A.  No, we left in May of 2011.  I quit, and

3  then within a few weeks, we left on a road trip.

4      Q.  What is Vanguard Fiduciary Trust?

5      A.  Might be a 401(k) that I had.

6      Q.  Do you receive income from Vanguard?

7      A.  Do I right now?  Can you repeat the

8  question, please?

9      Q.  Do you receive income from Vanguard

10 Fiduciary Trust?

11     A.  No, I do not.

12     Q.  Did you ever receive income from Vanguard

13 Fiduciary Trust?

14     A.  At one time I think I did.  I would have

15 to say yes, I did.

16     Q.  What is Montana GMX Technologies?

17     A.  That's a business name that I came up

18 with.

19     Q.  Is it a business?

20     A.  Can you read the full name of the

21 business that you're referring to?

22     Q.  Montana GMX Technologies.

23     A.  Is there anything after that?

24     Q.  It's either a corporation or an LLC.

25     A.  The Montana GMX Technologies,

Case 9:21-cv-00047-DWM   Document 53-14   Filed 02/09/23   Page 60 of 83

1  Incorporated is no longer a business.

2          Q.   Is Montana GMX Technologies, LLC a

3  business?

4          A.   It is.

5          Q.   When did the corporation end?

6          A.   To my best recollection, 2018.

7          Q.   When did the LLC begin?

8          A.   To my best recollection, 2018.

9          Q.   Did you re-characterize the corporation

10  as an LLC?

11          A.   Yes.

12          Q.   Who are the members of this LLC?

13          A.   I will object to the question because I

14  believe it is irrelevant to this case and the areas

15  at issue, but I will answer the question.

16          The members are myself and Ms. McLaughlin

17  and another gentleman by the name of Eugene

18  Pringle.

19          Q.   Who are the shareholders of the

20  corporation?

21          A.   The shareholders are the same persons

22  that I mentioned.

23          Q.   What was the purpose of Montana GMX

24  Technologies, LLC?

25          A.   Again, I'm going to object to that

1 question because I believe it is irrelevant, but I

2 will answer the question.

3          The purpose of the LLC is to conduct

4 business.

5     Q.  What kind of business did Montana GMX

6 Technologies do?

7     A.  Consulting.

8     Q.  Did Montana GMX Technologies, Inc. have

9 any employees?

10     A.  (No audible answer.)

11     Q.  Did you receive income from Montana GMX

12 Technologies?

13     A.  I received -- I received reimbursement as

14 an officer of the company.

15          COURT REPORTER:  Excuse me for

16 interrupting, Ms. Bissell.

17          Mr. Millett, I did not hear an answer to

18 the previous question:  Did Montana GMX

19 Technologies, Inc. have any employees?  What was

20 your answer?

21          THE WITNESS:  My answer was no.

22          COURT REPORTER:  Thank you.

23     Q.  (BY MS. BISSELL)  Did Ms. McLaughlin

24 receive reimbursement as an officer?

25     A.  From Montana GMX, Inc.?

UNITED STATES OF AMERICA v. MILLETT, et al.  1/4/2023                    THOMAS S. MILLETT

1      Q.   Yes.

2      A.   I don't remember.  I do not believe she

3  was an officer of that company, to my recollection.

4      Q.   Who were the officers of Montana GMX,

5  Inc.?

6      A.   I believe I was the only person.

7      Q.   Did Ms. McLaughlin received any other

8  reimbursement from Montana GMX, Inc.?

9      A.   Not to my knowledge.

10     Q.   Did Mr. Pringle receive reimbursement

11  from Montana GMX, Inc.?

12     A.   Not to my knowledge.

13     Q.   Was Mr. Pringle a board member?

14     A.   Of Montana GMX Technologies,

15  Incorporated?

16     Q.   Correct.

17     A.   I don't believe he was.

18     Q.   Was Ms. McLaughlin a board member?

19     A.   I don't believe she was.

20     Q.   Were you a board member?

21     A.   I think I was.

22     Q.   What kind of contracting work did Montana

23  GMX Technologies do?

24     A.   Contracted for a company called North

25  American Energy Services to provide energy-related

Case 9:21-cv-00047-DWM   Document 53-14   Filed 02/09/23   Page 63 of 83

1  services to NAES, N-A-E-S.

2      Q.  So Montana GMX, Inc. contracted directly

3  with North American Energy Services; correct?

4      A.  Yes.

5      Q.  And what services did Montana GMX, Inc.

6  provide North American Energy Services?

7      A.  Contracting services for their power

8  plants, procedure writing.

9      Q.  Uh-huh.  And then who would do the

10 procedure writing?

11     A.  I did.

12     Q.  So were you an employee of Montana GMX,

13 Inc.?

14     A.  No.

15     Q.  Did you contract with Montana GMX, Inc.?

16     A.  To tell you the truth, I don't remember.

17 I cannot answer that question fully.

18     Q.  Do you have any documents that would help

19 you answer that question?

20     A.  I do not.

21     Q.  Do you have any kind of communications

22 that would help you answer that question?

23     A.  I do not, not to my knowledge.

24     Q.  Do you have invoices for work provided

25 that would help you answer that question?

Case 9:21-cv-00047-DWM   Document 53-14   Filed 02/09/23   Page 64 of 83

1      A.   I do not believe so.

2      Q.   Is there any paperwork that occurred

3 between you and Montana GMX Technologies that would

4 explain your position there?

5      A.   If there is any documentation, I do not

6 know where it's at.

7      Q.   Who submitted the incorporation paperwork

8 to the Montana Secretary of State for Montana GMX

9 Technologies?

10     A.   I did.

11     Q.   Why did you create Montana GMX

12 Technologies?

13     A.   So we could do business with other

14 businesses.

15     Q.   And why is that a purpose that you

16 wanted?

17     A.   Well, first of all, I'm going to object,

18 because I think this is getting off the track of

19 what this case is about, however, I'll answer the

20 question.

21          Now, what was the question again?

22     Q.   Why did you wish to create a corporation

23 that would contract with other companies?

24     A.   Because it's a lot easier for big

25 corporations to deal with other corporations rather

Case 9:21-cv-00047-DWM   Document 53-14   Filed 02/09/23   Page 65 of 83

1 than a single person.

2          Q.   In what way?

3          A.   In all ways.

4          Q.   Can you describe some of those ways?

5          A.   It's a lot easier when it comes to

6 billing companies; that's the main reason.

7          Q.   Anything else?

8          A.   Not that I can think of.

9          Q.   Who took care of the billing for Montana

10 GMX Technologies?

11          A.   I did.

12          Q.   Did you receive any dividends from

13 Montana GMX?

14          A.   I don't recall.

15          Q.   Did you receive any distributions from

16 Montana GMX?

17          A.   I might have, I can't be sure.

18          Q.   Do you remember the amounts that you

19 would receive in distributions?

20          A.   I don't remember that, that was so long

21 ago.

22          Q.   So I just want to make sure I understand

23 this.  GMX would contract with larger corporations,

24 and you would provide the services that the

25 corporations contracted GMX for.  The corporations

1 would then -- Is that correct?

2       A.   Correct.

3       Q.   The corporations would then pay GMX; is

4 that correct?

5       A.   Correct.

6       Q.   And then Montana GMX would pay you

7 reimbursement as an officer of the corporation; is

8 that correct?

9       A.   Yes.

10      Q.   Did the reimbursement that you received

11 as an officer directly match the income that was

12 paid to Montana GMX from these larger corporations?

13      A.   I do not believe so.

14      Q.   Do Montana GMX have a separate bank

15 account from you?

16      A.   Yes, yes.

17      Q.   What happened -- Did it have surplus

18 funds in the bank account?

19      A.   I don't remember.

20      Q.   What is IronTEK?   Spelled I-r-o-n-T-E-K.

21      A.   IronTEK is a company that my friend owns.

22      Q.   Have you ever received income from

23 IronTEK?

24      A.   No.

25      Q.   Has Montana GMX Technologies ever

Case 9:21-cv-00047-DWM   Document 53-14   Filed 02/09/23   Page 67 of 83

1  received income from IronTEK?

2       A.  Be more specific.

3       Q.  Has IronTEK ever paid Montana GMX

4  Technologies?

5       A.  When you say Montana GMX Technologies,

6  are you referring to Incorporated or LLC?

7       Q.  Both.

8       A.  I do not believe IronTEK has ever paid

9  Montana GMX Technologies, Incorporated.

10          On the second part, I'm going to object

11 because the LLC company was formed in 2018 and that

12 is beyond the scope of years at issue, but I'll

13 answer the question and say yes.

14      Q.  Have you ever provided services to

15 IronTEK, either independently or through Montana

16 GMX Technologies?

17      A.  Yes.

18      Q.  Did you perform those services

19 independently?

20      A.  I don't understand the question.

21      Q.  Did you perform those services

22 individually, not through Montana GMX Technologies?

23      A.  I'm going to object to all these

24 questions about Montana GMX, LLC, because they are

25 outside the scope of this case, however, I will

1 answer the question and say no.

2      Q.   So just so we're clear, I asked if you

3 ever independently, outside of Montana GMX

4 Technologies, had worked for IronTEK or with

5 IronTEK or received income from IronTEK.

6      A.   That's correct.  I have never received

7 income individually from IronTEK, to my knowledge.

8      Q.   What's Mon-tucky Creations?

9      A.   It's kind of funny.  Mon-tucky Creations

10 was a -- and I don't even know if it exists

11 anymore -- it was a name that I reserved from the

12 Montana Secretary of State, and that's all it was

13 was a name, and I would do woodworking and sell it

14 at swap meets and flea markets.

15      Q.   You mentioned Eugene Pringle is currently

16 a member of Montana GMX Technologies and was a

17 shareholder of Montana GMX Technologies when it was

18 a corporation.  How do you know him?

19      A.   Well, I said that he was a member of

20 Montana GMX, Incorporated.

21      Q.   I believe you said shareholder, but maybe

22 I'm mistaken.

23      A.   I don't believe he was.

24      Q.   How do you know him?

25      A.   He encouraged me to -- he gave me some

Case 9:21-cv-00047-DWM   Document 53-14   Filed 02/09/23   Page 69 of 83

UNITED STATES OF AMERICA v. MILLETT, et al.   1/4/2023                    THOMAS S. MILLETT

1  information on organizing an LLC and how to do it.

2          Q.   How did you meet Mr. Pringle?

3          A.   I met him at a meeting on a Saturday with

4  some other people and he was giving a seminar, I

5  think.

6          Q.   What advice did you receive from him?

7          A.   I don't know if you want to call it

8  advice.  He just presented some information about

9  LLCs and how they're better than corporations.

10         Q.   What year did you attend this seminar?

11         A.   I'll object to the question because,

12 again, I believe this is outside the scope of the

13 case at hand, because the year I met him was 2018.

14         Q.   How did he get to be a member of the LLC?

15         A.   I asked him to be.

16         Q.   Does he provide you advice?

17         A.   No.

18         Q.   What services does he provide as a member

19 of the LLC?

20         A.   At this point, nothing.

21         Q.   Why did you ask him to be a member of the

22 LLC?

23         A.   Because I wanted three people on the LLC.

24         Q.   Have you ever paid Mr. Pringle money for

25 his advice?

UNITED STATES OF AMERICA v. MILLETT, et al. 1/4/2023                    THOMAS S. MILLETT

1      A.  I think, if I remember right, at the

2  seminar I talked to him one on one and I gave him

3  $100 to talk to me for, I don't know, 30 minutes,

4  maybe an hour.

5      Q.  So is it fair to say that you paid him a

6  consulting fee?

7      A.  I paid him for his time.

8      Q.  To consult you?

9      A.  I don't know if I would go that far.  It

10  was more of a question and answer.  I had

11  questions, he answered them.

12      Q.  Are you in communications still with

13  Mr. Pringle?

14      A.  I am not.

15      Q.  Does he get any correspondence from

16  Montana GMX Technologies?

17      A.  No.

18      Q.  As a member, what is his role?

19      A.  At this point he has no role.

20      MS. BISSELL:  So I believe that this is a

21  good place to stop for today.  We will be leaving

22  the deposition open so we can come back and do this

23  face to face, while -- which would allow us to use

24  the exhibits that we have.

25      Q.  (BY MS. BISSELL)  Mr. Millett, do you

Case 9:21-cv-00047-DWM   Document 53-14   Filed 02/09/23   Page 71 of 83

1  have any documents that you are -- or information,

2  correspondence, et cetera, that you have not

3  provided to us that you would like to provide to us

4  at this time?

5       A.  I don't have any at this time, but if I

6  do, do I have to have them to you by tomorrow?

7       Q.  No, you don't have to have it to us by

8  tomorrow.

9       A.  Okay.  Because that's the deadline of the

10 deposition.  I was just asking the question.

11      Q.  As of now, the discovery deadline is

12 Friday.

13      A.  Correct -- oh, I'm sorry, did I say

14 tomorrow?  Yes, that's what I mean, by Friday.  So

15 if I do find any documents and I submit them after

16 Friday, that's still okay?

17      Q.  I believe so.  We are going to file a

18 motion with the court, as we discussed earlier, to

19 extend discovery, so there will be -- if, you know,

20 Judge Molloy agrees with the motion and grants it,

21 then we will have greater time for discovery.  But

22 if you do find it and discovery is not extended,

23 you're still welcome to send it over.

24      A.  Okay.

25           MS. BISSELL:  Okay.  So you will -- Let's

Case 9:21-cv-00047-DWM   Document 53-14

1  go off the record.  Thank you, Debi.

2          (Deposition adjourned at 11:28 a.m. MST.)

3                      *  *  *

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 73

UNITED STATES OF AMERICA v. MILLETT, et al.    THOMAS S. MILLETT

Case 9:21-cv-00047-DWM    Document 53-14    Filed 02/09/23    Page 73 of 83

1                    C E R T I F I C A T E

2

3  STATE OF MONTANA     )
                       :  ss.
4  County of Flathead  )

5            I, Deborah Meredith, RPR, CRR,
   Freelance Court Reporter and Notary Public for the
6  State of Montana, residing in Hamilton, Montana,
   do hereby certify:

7
       That I was duly authorized to swear in the
8  witness and did report the deposition of THOMAS S.
   MILLETT in this cause;

9
       That the reading and signing of the deposition
10 by the witness have been expressly waived;

11     That the foregoing pages of this deposition
   constitute a true and accurate transcription of my
12 stenotype notes of the testimony of said witness.

13     I further certify that I am not an attorney nor
   counsel of any of the parties; nor a relative or
14 employee of any attorney or counsel connected with
   the action, nor financially interested in the
15 action.

16     IN WITNESS WHEREOF, I have hereunto set my hand
   and seal on this the 9th day of January, 2023.

17

18     _____
       Deborah Meredith, RPR, CRR
19     Freelance Court Reporter
       Notary Public, State of Montana
20     Residing in Hamilton, Montana
       My Commission expires:  7/7/2023
21

22

23

24

25

**A**

A-n-n-e-t-t-e 23:20
ability 10:10, 13:17
able 14:1
Absolute 22:12
account 66:15
    66:18
accurate 11:6
    73:11
acres 36:21
action 73:14, 73:15
actual 44:20
added 52:4
additional 8:14
address 6:5, 6:6, 6:9
    6:10, 33:14, 33:18
    34:1, 34:7, 56:10
addresses 56:14
adjourned 72:2
administrative
    30:23, 31:10, 31:13
    31:18, 32:2
adverse 25:12
    25:18
advice 25:7, 69:6
    69:8, 69:16, 69:25
affect 10:10
age 4:4
ago 57:7, 57:16
    65:21
agree 7:22, 55:5
agreements 30:4
agrees 71:20
ahead 10:7, 54:23
aliases 6:3
allow 70:23
Amendment 24:7
    24:17, 25:2, 25:17
    25:23, 26:4, 26:10
    26:20, 27:2, 28:3
    54:2
AMERICA 1:3
American 19:22
    20:2, 20:6, 20:8
    21:24, 38:1, 38:19
    62:25, 63:3, 63:6
amount 48:14
amounts 65:18
Annette 23:17

23:19
answer 6:25, 7:1
    7:12, 7:14, 7:19
    7:23, 7:25, 8:5
    13:10, 14:3, 14:4
    16:15, 16:25, 18:17
    22:20, 23:24, 24:3
    24:9, 24:19, 25:4
    26:1, 26:7, 26:13
    26:22, 27:4, 28:5
    31:9, 32:12, 33:2
    40:8, 40:11, 40:12
    43:11, 52:17, 52:24
    53:3, 55:4, 55:6
    55:12, 60:15, 61:2
    61:10, 61:17, 61:20
    61:21, 63:17, 63:19
    63:22, 63:25, 64:19
    67:13, 68:1, 70:10
answered 9:21
    22:24, 40:24, 70:11
answering 10:16
    13:11, 54:1, 54:3
    56:1
answers 6:20, 6:24
    7:4, 9:20
anybody 48:1, 48:1
anymore 4:21, 21:7
    36:14, 37:1, 37:3
    68:11
anyplace 39:24
apartment 33:22
    33:23, 34:9
apartments 56:21
apparently 46:10
appearance 5:22
appearing 2:8, 2:12
approximately
    14:16
arbitrary 32:13
area 34:8, 45:9
areas 60:14
Army 18:2
Aside 44:2
asked 9:18, 10:1
    16:23, 44:16, 53:4
    56:13, 68:2, 69:15
asking 31:2, 35:4
    55:25, 56:16, 71:10
assessed 32:12

assignments 40:7
assistant 53:14
Associated 2:7
assume 7:13, 46:9
    50:9, 57:4
assumed 58:19
attempted 28:20
attend 12:14, 69:10
attorney 5:4, 11:21
    11:22, 11:23, 12:1
    12:4, 12:9, 73:13
    73:14
attorney's 12:6
attorney-client
    11:16, 11:19
Attorneys 2:4
audible 22:20
    43:11, 61:10
audio 18:4, 23:3
Aug 37:17
August 36:8, 36:9
    36:25
authorized 73:7
Avenue 1:23
avoid 54:2

**B**

back 8:5, 10:22
    14:17, 14:23, 14:24
    37:12, 37:14, 37:22
    38:8, 38:24, 39:1
    39:5, 39:9, 39:10
    39:16, 39:19, 41:7
    49:13, 50:15, 53:16
    54:19, 54:21, 55:25
    70:22
background 36:10
    46:9
bad 37:5, 40:23
ballpark 20:20
    48:14, 48:21, 48:24
    49:1
bank 66:14, 66:18
barter 48:4
based 54:1
baseless 32:13
basis 21:21, 30:23
    31:11, 31:12, 32:14
    32:18, 33:4, 33:5

37:23
beginning 48:23
behalf 2:8
behoove 53:2
believe 29:15
    33:21, 35:7, 44:25
    46:13, 46:22, 48:15
    48:22, 49:1, 55:1
    56:12, 60:14, 61:1
    62:2, 62:6, 62:17
    62:19, 64:1, 66:13
    67:8, 68:21, 68:23
    69:12, 70:20, 71:17
Ben 2:5
best 7:14, 36:2
    36:3, 44:22, 60:6
    60:8
better 45:17, 69:9
beyond 67:12
big 47:19, 64:24
bill 51:7
billing 65:6, 65:9
bills 51:10, 51:22
birthday 16:19
    16:20
Bissell 2:3, 3:5, 4:8
    4:10, 5:3, 5:6, 5:14
    9:14, 9:17, 31:20
    34:11, 34:18, 34:22
    35:3, 53:7, 53:11
    53:16, 53:18, 53:20
    53:23, 54:12, 54:19
    54:23, 61:16, 61:23
    70:20, 70:25, 71:25
bit 7:5, 8:2, 12:17
    21:18, 57:17
blind 35:15, 35:16
    35:18, 35:22
blue 32:17
board 62:13, 62:18
    62:20
born 16:13, 16:17
    16:18
bought 42:2, 42:18
    42:24, 50:2
Boulevard 33:22
Box 2:11, 6:7
break 34:12, 53:19
    54:9
breaking 18:6

breaks 18:4, 23:3
    50:22
breakup 45:1
broadband 49:18
    49:23
build 44:4, 44:14
building 44:20
    48:6, 48:8
buildings 42:21
built 44:7, 47:12
    49:11, 49:14, 52:2
    52:5
bundled 50:1
bundles 49:24
bushes 43:4, 43:6
business 59:17
    59:19, 59:21, 60:1
    60:3, 61:4, 61:5
    64:13
businesses 52:21
    64:14
buy 56:7
buying 56:6

**C**

cable 49:18, 49:23
calculated 32:22
call 4:11, 15:24
    18:1, 53:2, 53:5
    53:7, 53:14, 53:21
    69:7
called 19:15, 19:16
    19:16, 19:22, 21:23
    22:12, 38:1, 47:14
    53:24, 58:1, 62:24
capacity 9:25, 10:4
care 4:21, 10:13
    52:9, 52:12, 52:14
    52:14, 65:9
career 18:21
careers 18:19
caring 50:16
Carson 47:7
case 1:6, 5:1, 5:2
    13:20, 14:7, 16:16
    16:22, 21:10, 21:11
    23:8, 23:9, 23:22
    24:1, 31:5, 60:14
    64:19, 67:25, 69:13

cases 25:17
cause 73:8
CenturyLink 50:3
certain 28:25
Certainly 6:17
Certificate 3:7
certify 73:6, 73:13
cetera 10:21, 71:2
chainsaw 43:22
chambers 53:8
  53:24
changed 13:16
  58:17
changes 23:10
Chelsea 2:3, 5:3
Chelsea.E.Bissell...
  2:6
chip 42:13
choose 41:22, 41:23
chores 51:3, 52:12
chosen 41:24
Circuit 25:10
  25:14, 25:16
city 34:4
civil 6:19, 25:17
  54:7
clarify 14:17
Clark 47:8, 47:9
clean 50:17, 51:1
cleaning 36:25
cleans 52:11
clear 7:20, 43:5
  43:17, 48:3, 68:2
cleared 42:25, 43:3
  43:4
clearing 43:19, 44:2
  44:18, 44:18, 47:19
  47:22, 47:25, 48:17
clearly 7:1
clerk 54:4
Code 32:6, 32:20
Colello 25:15
collectable 30:7
collecting 31:18
college 17:7
come 32:16, 38:14
  38:15, 39:5, 39:9
  39:10, 39:15, 41:7
  56:14, 70:22
comes 65:5

coming 14:24
Commission 73:21
common 16:23
communications
  63:21, 70:12
companies 19:19
  64:23, 65:6
company 19:13
  19:15, 19:16, 19:16
  19:22, 20:10, 20:13
  20:23, 21:1, 21:4
  21:14, 21:17, 21:20
  22:3, 22:12, 22:14
  38:17, 38:22, 39:3
  47:13, 47:14, 57:4
  57:6, 57:22, 58:1
  58:15, 58:18, 58:19
  58:23, 61:14, 62:3
  62:24, 66:21, 67:11
compel 55:24
compelled 24:8
  24:18, 25:3, 25:25
  26:6, 26:12, 26:21
  27:3, 28:4
complete 9:20, 11:6
completed 49:4
  56:8
completely 8:1
  13:18, 55:21
compromise 28:20
  29:10, 29:12, 29:14
  29:18, 29:19, 30:1
compromises 30:10
  30:13
condition 10:14
conduct 14:2, 61:3
confirm 24:11
connect 4:11, 9:4
connected 73:14
connection 9:1, 9:2
  9:3, 9:5
consider 16:3
  39:21, 39:23, 39:24
constitute 73:11
constructed 45:25
construction 44:10
  44:12, 44:14, 48:12
  48:20, 48:23, 49:4
consult 8:8, 70:8
consulted 22:17

54:4
consulting 22:12
  61:7, 70:6
continue 13:19
  13:23, 55:22, 56:16
continued 57:17
contract 52:19
  63:15, 64:23, 65:23
contracted 22:7
  62:24, 63:2, 65:25
contracting 37:25
  62:22, 63:7
contractor 21:24
  21:25, 47:19, 48:5
  52:18
contribute 48:11
contributed 43:19
  47:22
convicted 10:18
convinced 36:15
corporation 59:24
  60:5, 60:9, 60:20
  64:22, 66:7, 68:18
corporations 64:25
  64:25, 65:23, 65:25
  65:25, 66:3, 66:12
  69:9
correct 4:22, 6:8
  10:4, 12:10, 13:6
  13:7, 14:21, 15:23
  20:11, 38:12, 38:13
  39:16, 39:17, 41:14
  41:15, 42:22, 43:10
  43:14, 50:11, 51:8
  56:15, 59:1, 62:16
  63:3, 66:1, 66:2
  66:4, 66:5, 66:8
  68:6, 71:13
correctly 4:17
correspondence
  70:15, 71:2
cost 49:2
could've 57:1
  57:16
counsel 53:23
  73:13, 73:14
country 14:10
  14:11, 39:19
county 1:7, 47:5
  47:6, 47:8, 50:12

73:4
couple 29:1, 35:23
  35:25, 36:1
course 9:19, 13:13
  35:12, 46:9
court 1:1, 1:23
  1:24, 3:7, 5:2, 5:12
  5:12, 6:21, 6:25
  9:16, 11:12, 25:18
  30:18, 31:3, 31:14
  53:9, 54:11, 54:21
  61:15, 61:22, 71:18
  73:5, 73:19
courtesy 7:20
cover 49:19
covers 21:12
create 64:11, 64:22
Creations 68:8
  68:9
criminal 10:19
criminally 24:10
  24:19, 25:4, 26:1
  26:7, 26:13, 26:22
  27:4, 28:5
CRR 1:23, 73:5
  73:19
current 6:5, 6:6
  6:10
currently 12:16
  14:25, 15:19, 15:20
  21:8, 30:7, 38:18
  44:7, 49:16, 52:16
  68:15

D

D.C 2:5
date 14:14, 14:15
  14:18, 35:15, 35:16
  35:18, 35:22, 55:10
  55:15, 55:23, 56:25
day 40:10, 40:15
  40:21, 41:3, 41:5
  73:16
day-to-day 50:16
days 10:24
De 2:3, 5:10, 5:10
  9:5
deadline 71:9
  71:11

deal 64:25
Deb 5:12
Debi 9:5, 9:14
  34:23, 53:7, 53:16
  54:19, 72:1
Deborah 1:23, 73:5
  73:19
deceased 23:18
December 15:14
decided 36:12
  36:19, 36:25, 41:18
defendant 53:25
Defendants 1:8
defense 24:2, 30:21
  30:24, 31:4, 31:11
  31:16, 32:5, 32:9
  32:11, 32:14, 32:24
  33:1, 33:4
defenses 30:17
  30:19, 31:8
deficiency 28:8
  28:11, 31:23, 31:24
Define 44:12
definition 41:2
definitive 40:8
degree 17:4
Department 2:4, 5:4
depends 38:16
  38:21, 39:7, 39:11
deponent 10:4
deposed 11:3
deposition 1:17
  5:17, 6:18, 7:17
  8:13, 8:15, 8:19
  9:6, 9:12, 10:2
  10:5, 11:10, 11:14
  11:14, 12:2, 12:15
  13:14, 13:14, 13:23
  14:2, 31:6, 53:4
  53:6, 55:22, 70:22
  71:10, 72:2, 73:8
  73:9, 73:11
depositions 6:14
  11:22, 11:24, 16:24
  55:3
describe 36:3
  42:17, 65:4
destination 14:22
  15:6, 15:7, 15:9
  15:13, 15:16, 16:2

16:11
developing 36:24
dialup 49:22
different 8:3, 18:25
  33:16, 34:13, 40:6
  40:7, 52:21, 58:16
direct 25:16
directly 63:2, 66:11
discovery 9:19
  13:18, 71:11, 71:19
  71:21, 71:22
discuss 53:25
discussed 30:15
  71:18
Discussion 53:13
dishes 52:11
dishwasher 50:20
  50:21, 50:22
distribution 19:1
distributions 65:15
  65:19
District 1:1, 1:1
  5:1, 5:2
dividends 65:12
Division 1:2, 2:4
  5:5
divorced 23:15
doctor 12:21
doctor's 10:13
documentation 32:4
  32:8, 32:23, 33:10
  64:5
documents 11:11
  33:2, 63:18, 71:1
  71:15
doing 44:18, 51:3
DOJ 5:11
doorknobs 45:23
double-check 24:21
draw 25:12, 25:18
drill 43:15
drilled 43:1, 43:10
  43:14, 44:3, 48:18
driveway 47:15
  47:16
drops 9:2, 9:2, 9:3
  9:6
drywall 45:15
dug 46:12
duly 4:4, 25:20

73:7
dump 51:5
duties 20:12

**E**

earlier 57:25, 71:18
easier 64:24, 65:5
easy 45:14
eat 9:11
Eight 17:17
either 4:19, 4:20
  41:4, 52:7, 59:24
  67:15
electric 18:22
  19:22, 20:2, 20:6
  20:8, 43:1, 46:8
  51:7
electrical 19:1
electrician 20:4
  46:5
electricity 46:3
  46:4, 48:17, 49:18
email 8:19, 12:13
  13:5
employee 63:12
  73:14
employees 61:9
  61:19
encompass 49:23
encompassed 41:1
encompasses 50:9
encouraged 37:6
  68:25
energy 19:3, 19:4
  19:15, 19:17, 19:17
  19:18, 20:7, 20:7
  20:9, 20:14, 21:24
  38:1, 38:19, 57:25
  58:1, 58:4, 58:8
  58:9, 58:11, 58:13
  58:14, 62:25, 63:3
  63:6
energy-related
  62:25
engineer 17:23
  18:19
engineering 17:25
enlist 17:12
ensures 9:11

entail 55:20
entails 18:23, 18:25
enter 5:20
entered 35:2, 54:18
entities 22:8
entitles 25:11
equally 25:18
equipment 43:24
Esq 2:3, 2:3
estimate 48:21
et 10:21, 71:2
Eugene 60:17
  68:15
events 58:10
eventually 36:21
  37:22
exact 14:15, 14:18
  20:19
exactly 29:1, 29:7
  57:18
Examination 3:5
  4:7
example 40:9
  44:23, 50:21
Excuse 30:18, 57:5
  61:15
exhibits 55:23
  70:24
exist 11:20
exists 68:10
experience 18:18
expires 73:21
explain 18:23
  21:22, 64:4
expressly 73:10
extend 7:19, 71:19
extended 71:22

**F**

F.3d 25:15
face 70:23, 70:23
facets 18:25
facility 58:16
failed 30:22, 31:10
failure 25:19
fair 70:5
familiar 18:24
far 31:3, 50:7, 70:9
federal 6:19, 24:4

24:14, 24:24, 25:21
  26:2, 26:8, 26:14
  26:17, 26:24, 27:6
  27:9, 27:12, 27:15
  27:18, 27:21, 27:25
  28:8, 28:17, 54:6
fee 70:6
feed 23:3
feeds 18:4
feel 55:11, 55:14
feeling 5:19, 12:15
feels 7:5
felt 37:5
Fiduciary 59:4
  59:10, 59:13
Fifth 24:7, 24:12
  24:17, 24:22, 25:2
  25:11, 25:17, 25:23
  26:4, 26:10, 26:20
  27:2, 28:3, 54:2
file 23:10, 24:4
  24:14, 24:24, 25:21
  26:2, 26:8, 26:14
  26:17, 26:24, 27:6
  27:9, 27:12, 27:15
  27:18, 29:3, 29:9
  54:6, 71:17
filed 28:25
filing 23:11, 23:11
  55:18
Financial 56:2
  57:20
financially 48:11
  73:14
find 41:18, 71:15
  71:22
fine 4:15
finish 7:18
finishing 45:24
firewall 4:12
first 4:4, 5:8, 30:21
  33:19, 42:18, 57:12
  64:17
five-minute 53:19
  54:8
fix 50:24
fixtures 45:21
  45:22, 45:23
Flathead 1:7, 50:11
  73:4

flea 68:14
flying 15:7
follow 30:22, 31:10
  31:12, 31:17
following 35:1
  54:17
follows 4:6
foreclosed 56:9
  56:24, 57:3
foregoing 73:11
forgot 48:18
formed 67:11
former 6:1
forward 53:6
fossil 19:10
found 36:21
foundation 44:24
  45:3
four 39:4, 56:17
frame 40:2
framing 45:6, 45:7
  45:8, 45:10
Franklin 2:5
free 25:16, 25:18
Freelance 1:24
  73:5, 73:19
frequently 40:22
Friday 71:12, 71:14
  71:16
friend 36:2, 36:3
  36:5, 46:14, 66:21
friends 39:18, 40:21
fuel 19:10
full 11:6, 59:20
fully 9:21, 63:17
funds 66:18
funny 68:9
further 32:8, 73:13
future 18:19

**G**

garage 47:10
garbage 50:6
gas 50:4, 50:5
general 11:24
generally 39:19
  52:12
generation 19:1
  19:3

generator 19:5
gentleman 43:23
45:8, 45:9, 45:12
60:17
getting 48:17
48:18, 64:18
give 4:9, 6:15, 7:4
7:25, 9:20, 11:6
31:22, 36:10, 40:8
48:21, 52:17
given 7:14, 10:25
33:6
giving 25:7, 69:4
Glenna 56:12, 57:8
GMX 59:16, 59:22
59:25, 60:2, 60:23
61:5, 61:8, 61:11
61:18, 61:25, 62:4
62:8, 62:11, 62:14
62:23, 63:2, 63:5
63:12, 63:15, 64:3
64:8, 64:11, 65:10
65:13, 65:16, 65:23
65:25, 66:3, 66:6
66:12, 66:14, 66:25
67:3, 67:5, 67:9
67:16, 67:22, 67:24
68:3, 68:16, 68:17
68:20, 70:16
go 4:19, 5:8, 6:13
8:5, 9:9, 10:7
13:18, 14:23, 34:23
36:11, 37:21, 39:10
39:10, 39:18, 53:9
53:11, 53:16, 54:13
54:19, 54:23, 55:25
70:9, 72:1
goal 44:4, 44:6
goals 42:2, 42:3
goes 9:4
going 6:13, 9:19
10:22, 11:15, 14:4
25:6, 34:13, 35:3
45:16, 53:4, 60:25
64:17, 67:10, 67:23
71:17
golf 35:12
golfing 35:18
gonna 45:11
good 9:16, 40:21

70:21
government 31:17
graduate 17:2
graduated 17:3
grants 71:20
gravel 47:17
gravel/dirt 47:16
great 4:14, 35:20
greater 71:21
ground 6:13, 8:14
grounds 14:5, 29:21
grow 16:21
guess 8:12, 32:16
49:3, 49:6, 50:1
52:11, 54:9
guessing 41:6

**H**

Hamilton 1:25
73:6, 73:20
hand 69:13, 73:16
handy 46:2, 50:23
hang 34:15
happen 7:25
happened 28:22
29:17, 36:9, 37:10
66:17
hard 45:11, 45:13
head 29:7, 39:24
51:3
heading 13:8
headquartered
19:23
hear 4:14, 5:17
8:23, 8:23, 13:2
20:24, 23:2, 42:6
61:17
heard 7:13, 22:25
heater 51:15, 51:16
51:19
held 53:13
Hello 18:6
help 12:23, 27:23
46:15, 47:25, 63:18
63:22, 63:25
helped 43:5, 45:9
Henderson 34:2
34:2
hereunto 73:16

hesitance 53:25
high 17:2, 17:3
17:10
hire 47:24, 50:25
hired 11:22, 12:4
43:16, 43:23, 44:1
45:4, 45:18, 46:13
46:15, 46:22, 48:1
48:2, 48:2
Hold 17:8, 33:21
holding 55:22
home 15:22, 15:24
16:1, 16:3, 16:7
16:10, 39:22, 39:23
39:24, 50:16, 50:20
52:9
hour 70:4
hours 10:15
house 44:4, 44:7
44:14, 44:20, 46:4
46:19, 47:10, 47:15
48:12, 48:23, 49:2
49:5, 49:11, 49:14
50:4, 51:20, 52:1
52:14, 56:6, 56:7
56:10, 56:21, 56:24
57:3, 57:8
household 52:13
houses 45:24, 56:17
Houston 22:14
How's 23:23, 23:25
husband 40:10

**I**

I-r-o-n-T-E-K
66:20
idea 35:20
illegally 33:3
impact 23:12
impedes 13:17
important 6:25, 7:4
7:18
improvements
42:21, 52:2, 52:4
includes 10:19
including 24:8
24:17, 25:2, 25:24
26:5, 26:11, 26:20
27:2, 28:3

income 21:11, 23:9
23:9, 23:12, 28:8
28:17, 57:19, 58:3
59:6, 59:9, 59:12
61:11, 66:11, 66:22
67:1, 68:5, 68:7
Incorporated 60:1
62:15, 67:6, 67:9
68:20
incorporation 64:7
independent 52:18
independently
67:15, 67:19, 68:3
indicated 13:5
indication 6:15
individually 67:22
68:7
industry 18:22
18:24
inference 25:12
inferences 25:19
information 13:19
14:7, 33:6, 69:1
69:8, 71:1
ingested 10:10
initial 14:22, 15:6
initially 19:14
installment 30:3
instant 8:19
instruct 6:23
intent 28:13
interest 32:13, 37:4
interested 73:14
interior 46:18
Internal 32:6, 32:20
internet 4:11, 49:19
49:21, 49:22, 49:22
50:2, 50:2
interrupted 37:13
interrupting 61:16
invasive 10:3
invoices 63:24
invoke 25:17
involved 43:25
IronTEK 66:20
66:21, 66:23, 67:1
67:3, 67:8, 67:15
68:4, 68:5, 68:5
68:7
irrelevant 31:1

31:4, 55:2, 60:14
61:1
IRS 24:5, 28:7
28:11, 28:14, 28:17
29:21, 30:1, 30:4
30:6, 30:11, 33:2
issue 8:22, 9:10
41:12, 52:24, 60:15
67:12

**J**

January 1:14, 4:1
4:25, 13:6, 14:20
15:4, 15:6, 15:8
29:15, 38:25, 73:16
jcrcourt@montana....
1:25
Jeffries 1:23
job 36:13, 36:15
37:6, 39:13, 39:15
57:15
jobs 17:6
jog 8:3
joined 17:10
jointly 23:11
Judge 53:2, 53:8
53:14, 53:24, 54:4
54:5, 71:20
July 45:2, 45:2
June 45:2
Justice 2:4, 5:5

**K**

Kalispell 15:3, 15:7
keep 6:23, 8:14
kind 19:9, 22:4
35:21, 45:13, 45:22
45:23, 46:15, 52:10
61:5, 62:22, 63:21
68:9
know 4:10, 4:13
5:21, 7:9, 7:23
7:24, 8:4, 8:24
14:8, 14:15, 14:18
18:2, 20:19, 25:7
25:8, 25:10, 29:6
30:25, 36:24, 37:2
37:6, 39:8, 43:24

44:18, 45:4, 45:5
45:6, 45:17, 45:19
46:3, 46:11, 46:16
48:13, 50:21, 56:3
56:25, 57:7, 57:16
64:6, 68:10, 68:18
68:24, 69:7, 70:3
70:9, 71:19
knowledge 11:8
57:21, 62:9, 62:12
63:23, 68:7
known 35:5, 58:14

**L**

labor 43:22, 47:23
laid 47:17
land 36:21, 42:19
42:20
landscaper 47:2
landscaping 46:24
46:25
larger 65:23, 66:12
Las 19:12, 33:15
33:17, 33:21, 33:25
34:3, 34:4, 34:10
35:10, 37:12, 37:14
37:19, 38:9, 41:25
47:1, 47:7, 56:4
56:5, 56:6, 56:7
56:14, 56:19, 57:9
57:15, 58:6, 58:10
58:25
lasts 9:10
laughs 33:20
laundry 50:18, 51:2
law 54:4, 55:16
lawful 4:4
lay 39:24
leave 21:14, 58:25
leaving 13:6, 70:21
left 20:22, 20:22
21:3, 21:19, 37:10
37:14, 57:15, 59:2
59:3
legal 25:7, 30:22
31:10, 31:13, 31:18
31:20
lengths 40:7
levy 28:14

liability 27:25
28:17
liberty 12:7, 12:8
lies 25:10
limited 21:21, 24:8
24:17, 25:2, 25:24
26:5, 26:11, 26:20
27:2, 28:3
line 49:20
list 51:3
listed 30:18, 30:21
31:8, 32:11, 33:1
little 8:2, 12:17
21:18, 37:20, 57:17
live 36:20, 37:1
37:3, 38:3, 41:8
41:10, 49:10, 49:14
56:19
lived 33:16, 33:19
33:24, 34:7, 34:8
34:9, 56:20
LLC 59:24, 60:2
60:7, 60:10, 60:12
60:24, 61:3, 67:6
67:11, 67:24, 69:1
69:14, 69:19, 69:22
69:23
LLCs 69:9
located 1:13, 41:12
Lodge 56:12, 57:8
Lolita 2:3, 5:10
Lolita.DePalma@u...
2:6
long 17:16, 18:12
35:5, 36:6, 37:19
38:6, 38:22, 39:2
57:7, 57:16, 65:20
longer 9:10, 60:1
look 29:7, 29:24
looked 42:17
looking 41:20
41:21
lot 18:25, 45:17
46:1, 46:16, 47:18
48:3, 64:24, 65:5

**M**

ma'am 7:16, 22:22
33:13

machinery 47:20
mailing 6:6
main 65:6
maintenance 22:6
43:7, 48:16, 50:19
making 31:4, 57:13
March 13:22, 14:16
14:18, 36:23
Marion 1:13, 2:11
6:7, 6:11, 12:11
14:12, 15:22, 16:7
38:10, 38:23, 39:6
39:16, 39:21, 41:7
41:13, 41:22, 41:23
50:15
markets 68:14
married 22:19
22:23, 23:5, 23:11
23:15
match 66:11
materials 48:6, 48:8
48:20
matter 4:19
McLaughlin 1:7
5:15, 13:16, 35:6
35:24, 36:15, 39:25
40:5, 40:14, 40:16
40:17, 41:9, 41:17
44:1, 45:17, 47:2
48:2, 48:7, 49:10
50:23, 52:7, 52:8
60:16, 61:23, 62:7
62:18
mean 15:10, 15:15
36:4, 42:20, 43:4
44:12, 71:14
means 6:20, 21:22
meant 10:2
mechanical 43:24
medical 10:14
medication 10:9
12:23
meet 35:9, 35:11
69:2
meeting 69:3
meets 68:14
member 62:13
62:18, 62:20, 68:16
68:19, 69:14, 69:18
69:21, 70:18

members 60:12
60:16
memory 8:4
mentioned 60:22
68:15
Meredith 1:23, 5:12
73:5, 73:19
message 8:19
messed 4:20
met 35:14, 69:3
69:13
MICHELLE 1:6
Michigan 20:1
Millett 1:6, 1:19
2:10, 3:4, 4:3, 4:16
4:18, 4:23, 4:24
5:9, 5:14, 5:25
12:13, 13:10, 22:21
23:17, 25:6, 34:15
35:5, 43:12, 53:1
54:23, 61:17, 70:25
73:8
Millett's 53:25
mind 8:14
minor 10:19
minute 9:10, 13:17
minutes 70:3
Missoula 1:2, 1:23
13:15
mistaken 68:22
Molloy 53:2, 53:24
54:4, 54:5, 71:20
Molloy's 53:8
53:14
Mon-tucky 68:8
68:9
money 21:9, 48:15
69:24
Montana 1:1, 1:13
1:24, 1:24, 1:25
2:11, 5:2, 6:7, 6:11
6:12, 14:25, 15:22
15:25, 16:8, 25:10
36:17, 36:19, 37:1
37:22, 38:3, 38:5
38:6, 38:10, 38:11
38:14, 38:15, 38:23
39:1, 39:20, 39:21
40:15, 40:18, 41:11
41:13, 49:13, 59:16

59:22, 59:25, 60:2
60:23, 61:5, 61:8
61:11, 61:18, 61:25
62:4, 62:8, 62:11
62:14, 62:22, 63:2
63:5, 63:12, 63:15
64:3, 64:8, 64:8
64:11, 65:9, 65:13
65:16, 66:6, 66:12
66:14, 66:25, 67:3
67:5, 67:9, 67:15
67:22, 67:24, 68:3
68:12, 68:16, 68:17
68:20, 70:16, 73:3
73:6, 73:6, 73:20
73:20
month 39:9, 49:8
months 13:22
37:20, 38:10, 39:8
39:8, 39:9
morning 12:14
mortgage 42:15
56:4, 57:4, 57:5
57:6, 57:11, 57:13
57:22
MOS 18:1
motion 54:6, 55:18
71:18, 71:20
Mount 1:23
Mountain 34:14
34:19, 34:21
move 53:6
moved 58:10
MST 1:14, 34:25
35:1, 54:16, 54:17
72:2
mute 8:15, 34:16

**N**

N-A-E-S 63:1
NAES 63:1
name 4:17, 5:3, 5:7
5:8, 12:6, 22:15
23:17, 34:5, 56:12
59:17, 59:20, 60:17
68:11, 68:13
names 6:1
Nancy 19:17
National 56:1

57:20
natural 46:10, 50:5
nature 23:21, 35:13
natures 7:2
Navy 17:11, 17:16
  18:1, 18:8, 18:11
  18:19
necessary 50:17
need 9:20, 13:19
needed 52:1
needs 50:19
Nevada 19:16, 20:9
  20:13, 20:23, 20:25
  21:3, 21:14, 21:17
  21:19, 22:2, 34:2
  36:14, 57:9, 58:13
  58:18, 58:19, 58:22
never 33:7, 48:1
  56:8, 68:6
newly 45:25
nicknames 6:3
Nicole 53:14
nodding 7:3
Nope 9:16
normal 41:21
  50:18
North 21:23, 38:1
  38:18, 62:24, 63:3
  63:6
northwest 36:19
nose 12:17
Notary 1:24, 73:5
  73:20
noted 25:20
notes 73:12
notice 28:10, 28:13
  31:23, 31:23
noticed 13:14
notices 28:7
notification 33:3
  33:6
November 16:20
nuclear 17:21
  17:25, 18:19, 19:7
number 5:3, 20:19
  25:15, 28:25, 33:23
  56:11
numbers 32:16
  32:19
NV 19:17, 20:7

58:14

## O

oath 4:6, 11:1
object 11:15, 24:6
  55:3, 55:9, 55:11
  55:12, 55:14, 60:13
  60:25, 64:17, 67:10
  67:23, 69:11
objecting 54:25
  55:10
Objection 24:16
  25:1, 26:19, 27:1
  28:2
obtaining 33:2
obviously 45:1
  51:20
occasion 51:6
occurred 64:2
occurs 8:4, 8:24
  53:14
offense 10:19
offensive 10:2
offer 28:20, 29:10
  29:11, 29:13, 29:17
  29:19, 54:24
offers 28:16, 29:25
  30:9
Office 2:11
officer 61:14, 61:24
  62:3, 66:7, 66:11
officers 62:4
oh 18:7, 22:24
  42:8, 46:1, 71:13
okay 4:9, 4:14, 4:16
  4:22, 4:24, 5:20
  5:25, 6:13, 6:16
  6:18, 7:12, 7:15
  8:6, 8:7, 8:12, 8:18
  8:22, 8:25, 9:1, 9:8
  9:13, 9:17, 9:23
  9:24, 10:6, 10:8
  10:9, 10:25, 15:2
  17:22, 18:4, 18:4
  20:12, 21:8, 21:16
  23:2, 30:17, 34:17
  34:18, 34:22, 35:24
  36:20, 41:16, 43:17
  46:7, 50:6, 51:22

52:1, 52:8, 53:22
  54:14, 55:15, 55:17
  58:17, 71:9, 71:16
  71:24, 71:25
older 45:9, 45:12
on-the-phone 8:13
once 51:12, 53:20
ones 30:14
ongoing 8:10, 8:16
  8:20
open 55:22, 70:22
operate 19:6
operating 20:14
  20:15, 22:5
Operations 57:23
  57:25
order 13:19, 54:2
organization 38:1
organizations 22:8
organizing 69:1
original 15:7, 15:9
  15:13, 15:15, 15:16
  16:11
Originally 19:14
  44:6
outside 30:12
  30:14, 67:25, 68:3
  69:12
owned 58:13
ownership 58:16
  58:20
owns 66:21

## P

P.O 2:5, 6:7
page 3:3, 25:15
pages 73:11
paid 27:25, 42:5
  42:7, 42:8, 42:9
  48:6, 48:9, 48:19
  48:19, 48:20, 51:12
  66:12, 67:3, 67:8
  69:24, 70:5, 70:7
painting 46:18
Palma 2:3, 5:10
  5:10, 9:5
paperwork 64:2
  64:7
parks 47:5

part 37:9, 40:23
  55:4, 55:6, 67:10
part-time 37:23
parties 5:6, 25:16
  33:7, 73:13
pay 28:17, 48:8
  51:7, 51:10, 51:22
  57:11, 66:3, 66:6
paying 57:17
payment 42:10
  48:3, 56:8
payments 57:11
  57:14
penalties 32:12
pending 5:1, 8:9
people 4:20, 20:16
  69:4, 69:23
perfectly 4:15
perform 67:18
  67:21
periods 39:12
person 12:15, 13:15
  23:15, 47:5, 47:18
  62:6, 65:1
Personal 14:6
personally 43:15
  43:17
persons 60:21
phone 4:12, 5:15
  8:18, 34:16, 40:25
  49:20, 53:13, 53:20
photocopiers 18:11
  18:15
pickup 50:6, 50:10
  51:2
piece 41:19, 42:19
  42:20
place 21:23, 33:19
  33:24, 56:20, 70:21
places 33:16, 56:17
Plaintiff 1:4, 2:8
planned 13:14
plans 13:17
plant 19:6, 19:7
  19:10, 22:5, 58:12
  58:20
plants 20:15, 63:8
pleading 24:12
  24:22, 25:11, 54:2
Pleasant 1:13, 2:10

6:11, 38:12, 41:8
  41:13
please 5:7, 5:21, 7:9
  8:4, 8:8, 8:18, 8:23
  9:3, 13:10, 23:19
  28:9, 31:15, 34:15
  34:16, 59:8
plumber 46:13
  46:14, 46:14
plumbing 45:22
  46:11, 46:16, 46:17
  46:17
point 31:1, 53:1
  69:20, 70:19
position 64:4
possible 48:9
Post 2:11
potential 24:2
pour 45:4
poured 44:24, 45:3
power 17:21, 19:6
  19:7, 19:16, 19:22
  20:3, 20:6, 20:8
  20:10, 20:13, 20:15
  20:23, 20:25, 21:4
  21:14, 21:17, 21:19
  22:2, 22:5, 43:1
  57:23, 57:25, 58:12
  58:14, 58:18, 58:19
  58:20, 58:22, 63:7
preconstruction
  48:16
prepare 11:9
prepared 27:21
present 5:6
presented 69:8
pretty 46:2, 50:23
prevent 10:14
previous 61:18
previously 9:22
  41:16, 56:13
Pringle 60:18
  62:10, 62:13, 68:15
  69:2, 69:24, 70:13
prior 11:13
private 14:6
privilege 11:16
  11:19, 14:6
pro 2:12, 25:8
probably 40:20

50:25, 58:2
procedure 6:20
  54:7, 63:8, 63:10
procedures 22:3
  22:4, 22:5, 22:6
proceedings 34:24
  35:1, 54:15, 54:18
program 17:21
pronouncing 4:17
proof 25:19, 32:4
  32:24, 33:10
propane 51:12
  51:14, 51:15
proper 14:2, 33:3
property 16:5
  36:24, 37:4, 37:9
  38:4, 38:11, 41:10
  41:12, 41:18, 41:19
  41:21, 42:1, 42:4
  42:5, 42:7, 42:8
  42:9, 42:13, 42:15
  42:17, 42:23, 42:25
  43:2, 43:3, 43:5
  43:18, 43:20, 44:5
  44:8, 44:11, 44:15
  48:16, 48:22, 49:12
  49:15, 49:17, 51:19
  51:23, 51:24, 56:5
prosecute 24:10
  24:19, 25:4, 26:1
  26:7, 26:13, 26:22
  27:4, 28:5
proven 32:15, 32:19
provide 62:25, 63:6
  65:24, 69:16, 69:18
  71:3
provided 63:24
  67:14, 71:3
Public 1:24, 73:5
  73:20
purchase 36:22
  41:18
purchased 14:23
purpose 60:23, 61:3
  64:15
put 14:16

## Q

question 7:8, 7:12

7:19, 7:24, 8:1, 8:5
  8:9, 9:22, 11:16
  13:10, 13:12, 14:3
  14:4, 16:15, 16:25
  22:24, 23:23, 23:24
  23:25, 24:6, 24:7
  24:12, 24:16, 24:22
  25:1, 25:12, 25:23
  26:4, 26:10, 26:19
  27:1, 28:2, 31:1
  31:7, 40:11, 40:12
  40:23, 44:16, 48:24
  52:10, 52:25, 55:1
  55:4, 55:7, 55:12
  59:8, 60:13, 60:15
  61:1, 61:2, 61:18
  63:17, 63:19, 63:22
  63:25, 64:20, 64:21
  67:13, 67:20, 68:1
  69:11, 70:10, 71:10
questioning 8:10
questions 7:2, 9:18
  9:21, 9:24, 10:1
  10:16, 16:23, 18:16
  35:4, 53:3, 54:1
  54:3, 56:1, 56:1
  67:24, 70:11
quit 21:5, 21:6
  36:12, 36:15, 37:6
  37:6, 57:15, 58:24
  59:2
quitclaimed 37:4
  37:9
quote 25:16

## R

ran 46:4
raw 42:19, 42:20
re-characterize 60:9
read 59:20
reading 73:9
real 16:5
really 40:8, 42:3
  43:25, 47:4
Realtors 41:21
reason 4:12, 9:1
  11:5, 13:25, 28:23
  44:16, 54:25, 65:6
recall 30:8, 30:16

32:3, 33:20, 65:14
recap 38:8, 53:20
receive 28:7, 28:10
  28:13, 59:6, 59:9
  59:12, 61:11, 61:24
  62:10, 65:12, 65:15
  65:19, 69:6
received 31:23
  33:7, 57:19, 58:3
  61:13, 61:13, 62:7
  66:10, 66:22, 67:1
  68:5, 68:6
recess 34:25, 54:16
recollection 7:15
  28:12, 28:15, 44:23
  45:16, 48:3, 50:12
  60:6, 60:8, 62:3
reconnect 9:3
reconvene 34:12
  34:18, 54:9, 54:13
reconvened 34:25
  54:17
record 5:1, 6:21
  7:20, 9:9, 15:24
  34:23, 35:2, 36:22
  39:23, 53:5, 53:10
  53:12, 53:13, 53:17
  54:13, 54:18, 54:20
  54:22, 72:1
recorded 6:21, 6:24
  7:3
recording 6:23
records 29:8, 29:24
recycling 50:9
  50:12
referring 16:11
  29:5, 31:21, 38:24
  59:21, 67:6
regarding 11:14
  28:8
reimbursement
  61:13, 61:24, 62:8
  62:10, 66:7, 66:10
rejected 28:23
  28:24, 29:20, 29:22
rejoin 9:7
related 14:7
relationship 35:14
  35:21, 36:6
relative 73:13

relevance 54:1
relevancy 13:12
relevant 13:9, 13:11
  13:13, 14:2, 16:14
  16:16, 16:22, 17:1
  18:17, 21:10, 23:8
  23:23, 23:25, 52:23
Reliant 19:15, 20:7
  20:9, 20:14, 57:24
  58:1, 58:3, 58:8
  58:9, 58:11, 58:13
relinquish 55:9
remain 14:10, 14:11
remember 8:2
  10:11, 22:14, 29:1
  29:6, 29:23, 34:1
  34:5, 34:10, 47:13
  48:10, 49:8, 51:11
  56:11, 56:25, 57:18
  62:2, 63:16, 65:18
  65:20, 66:19, 70:1
remind 47:6, 58:7
repaired 18:11
  18:14
repeat 31:7, 59:7
rephrase 7:9
report 23:13, 73:8
Reported 1:23
reporter 1:24, 3:7
  5:12, 5:13, 6:21
  6:25, 9:16, 31:14
  53:9, 54:11, 54:21
  61:15, 61:22, 73:5
  73:19
Reporting 1:23
represented 11:17
  25:9
request 6:22, 30:6
required 30:22
  31:10
reserved 68:11
residential 6:8, 6:10
residing 1:24, 73:6
  73:20
respond 7:2
restroom 53:19
retain 55:14
return 14:12, 24:14
returned 38:10
returning 14:20

15:3, 15:5, 16:1
  16:2
returns 24:4, 24:24
  25:21, 26:2, 26:8
  26:14, 26:17, 26:24
  27:6, 27:9, 27:12
  27:15, 27:18, 27:21
  28:25, 29:3, 29:9
Revenue 32:6
  32:20
reviewed 11:11
right 4:17, 5:24
  7:21, 8:8, 23:7
  24:7, 24:17, 25:2
  25:24, 26:5, 26:11
  26:20, 27:2, 28:3
  30:20, 33:18, 34:13
  50:14, 51:17, 54:8
  54:10, 54:12, 54:21
  55:9, 55:14, 59:7
  70:1
road 1:13, 2:10
  6:11, 38:12, 41:8
  41:13, 41:17, 59:3
role 17:18, 19:2
  70:18, 70:19
romantic 36:1, 36:6
room 5:18, 5:20
round-trip 14:21
RPR 1:23, 73:5
  73:19
rule 6:14, 55:19
  55:23
rules 6:14, 6:19
  8:14, 54:6
run 43:1, 48:17
runny 12:17

## S

S.E.C 25:14
sailor 17:19
satisfactory 55:13
Saturday 69:3
saying 7:2, 13:21
  32:21, 54:24
says 14:19, 15:3
  15:5, 32:7
school 17:2, 17:3
  17:10

scope 67:12, 67:25
69:12
scratch 44:3
scratchy 12:18
se 2:12, 25:8
seal 73:16
second 4:9, 29:11
29:13, 29:17, 29:19
33:24, 52:17, 53:10
53:12, 67:10
Secretary 64:8
68:12
sections 32:21
see 12:21, 13:12
18:16, 39:25, 40:4
40:10, 40:13, 40:15
53:5, 55:8
sell 68:13
seminar 69:4, 69:10
70:2
send 71:23
sends 38:22
sense 7:10, 36:1
sent 11:12, 11:12
12:13, 14:19, 15:2
38:16, 39:7, 39:13
separate 66:14
September 36:18
37:18
sequence 58:9
series 9:24
serve 17:16
service 38:19
49:16, 50:2, 50:4
50:13
serviced 51:23
51:24
services 21:24, 38:2
56:2, 57:20, 62:25
63:1, 63:3, 63:5
63:6, 63:7, 65:24
67:14, 67:18, 67:21
69:18
set 73:16
settle 37:7
seven 10:15
shareholder 68:17
68:21
shareholders 60:19
60:21

short 22:13, 22:15
shovel 50:17, 51:1
showing 14:1
shows 36:23
sic 25:13, 59:1
siding 46:21
signing 73:9
Similar 22:2
simplytom65@yah...
2:12
single 65:1
sir 31:14
sitting 10:15
skill 47:5
sky 32:17
slightly 40:22
snow 50:17, 51:1
sold 58:13
somebody 45:4
45:18, 46:22, 50:25
soon 8:24
sorry 10:7, 17:24
18:7, 20:24, 21:15
23:4, 31:14, 33:12
37:13, 42:6, 54:10
54:12, 71:13
sort 30:10, 46:15
sought 33:7
sounds 30:25
South 33:21
speak 11:13, 40:16
40:17, 40:24, 40:25
40:25
speaking 41:2
specific 28:9, 38:7
40:1, 41:19, 67:2
specifically 17:20
speeding 10:20
10:23
spell 23:19
Spelled 66:20
spent 48:15, 48:22
split 42:10
spoke 12:9
spring 45:1
ss 73:3
Staff 2:7
standard 10:1
55:16
start 12:19, 35:3

started 15:16, 36:24
41:20, 44:17
state 1:24, 5:7, 14:9
64:8, 68:12, 73:3
73:6, 73:20
stated 14:9, 31:9
38:21, 41:16
States 1:1, 1:3
25:11, 30:22, 31:9
36:17, 53:24, 54:6
stating 12:14, 32:18
Station 2:5
status 30:7
stay 15:25, 16:3
37:19, 38:13, 38:22
39:2
stayed 38:4, 38:9
38:11, 56:18
stenographically
53:15
stenotype 73:12
steps 30:23, 31:11
31:13, 31:18, 31:20
32:2
stop 6:23, 57:13
70:21
stopped 56:16, 58:7
stove 51:20, 51:20
strange 52:10
strategy 31:2
street 34:5, 34:10
56:11, 56:12
stuff 22:2
subjective 40:6
submit 29:13, 71:15
submitted 29:10
29:11, 29:25, 30:3
30:9, 30:17, 31:3
64:7
subsequently 34:25
54:16
substance 10:10
sufficient 14:8, 32:1
suggested 54:5
Suite 1:23
summer 44:19
supervise 20:16
supervising 20:15
support 32:5, 32:9
supposed 31:22

33:5
sure 23:20, 29:23
53:11, 55:21, 65:17
65:22
surplus 66:17
suspend 9:6
swap 68:14
swear 73:7
sworn 4:4
symptoms 12:16
12:19, 12:24, 13:1
13:3

—— T ——

take 34:11, 51:5
52:12, 52:14, 53:18
taken 6:18, 10:5
10:9, 53:15
takes 52:14
talk 8:9, 70:3
talked 11:21, 11:23
12:1, 70:2
talking 15:18
30:12, 40:18, 41:20
42:9
tax 2:4, 5:5, 21:11
23:9, 24:4, 24:14
24:24, 25:21, 26:2
26:8, 26:14, 26:17
26:24, 27:6, 27:9
27:12, 27:15, 27:18
27:21, 27:25, 28:8
28:17, 31:19, 32:12
taxes 23:10, 23:10
tech 8:22, 9:10
Technologies 59:16
59:22, 59:25, 60:2
60:24, 61:6, 61:8
61:12, 61:19, 62:14
62:23, 64:3, 64:9
64:12, 65:10, 66:25
67:4, 67:5, 67:9
67:16, 67:22, 68:4
68:16, 68:17, 70:16
TELEPHONIC
1:17
tell 4:5, 10:11, 12:7
12:8, 17:6, 17:9
29:21, 63:16

ten-minute 34:12
terms 38:22
testified 4:6
testimony 10:25
11:6, 73:12
Texas 22:14
text 8:19, 41:1
thank 5:24, 47:9
54:14, 61:22, 72:1
thin 32:17
thing 44:17
things 18:10, 50:18
think 36:18, 36:22
36:23, 43:8, 43:8
44:20, 44:25, 45:2
45:16, 45:18, 50:14
51:13, 52:6, 52:23
53:1, 53:4, 57:22
59:14, 62:21, 64:18
65:8, 69:5, 70:1
thinking 17:8
40:25, 49:6
third 33:7, 48:18
56:17
Thomas 1:6, 1:19
2:10, 3:4, 4:3, 5:9
73:8
thought 22:24, 25:9
47:21
three 37:20, 38:9
39:4, 39:8, 56:21
69:23
throat 12:18
ticket 10:23, 14:19
14:21, 14:23, 15:2
tickets 10:20
time 9:12, 13:24
22:13, 22:16, 32:3
32:10, 32:25, 34:13
34:14, 34:19, 34:21
36:20, 37:25, 39:8
39:9, 39:17, 40:1
59:14, 70:7, 71:4
71:5, 71:21
today 4:16, 10:11
11:7, 13:15, 58:14
70:21
today's 4:25
told 37:1
Tom 53:25

tomorrow 13:16
 71:6, 71:8, 71:14
top 29:6
total 49:2
tough 45:19, 46:23
 48:24
town 13:6, 13:22
 14:9, 50:7
track 64:18
trade 47:3
traffic 10:19
trailer 41:10, 51:18
 51:19, 51:21, 52:15
transcribed 7:18
transcription 73:11
transferred 58:15
trash 51:2, 51:5
travel 36:14, 36:16
 37:3, 37:7
traveled 21:18
 36:16
traveling 40:4
 40:10, 40:13
trees 43:4, 43:6
trial 2:4, 5:4
trip 15:17, 15:18
 15:19, 15:20, 41:17
 59:3
troubleshooting
 9:11
true 73:11
truly 55:1
Trust 59:4, 59:10
 59:13
truth 4:5, 4:5, 4:6
 10:11, 63:16
twice 51:12
two 10:23, 18:13
 30:12, 39:8, 39:9
two-stage 44:17
typically 53:3

U

U.S.A 2:8
uh-huh 7:3, 47:24
 63:9
unable 12:14
unclear 7:8
undergraduate 17:4

understand 6:16
 6:16, 7:6, 7:7, 8:11
 8:16, 8:17, 9:8
 9:17, 10:6, 10:8
 10:11, 65:22, 67:20
understanding
 10:15, 55:3
understood 7:13
United 1:1, 1:3
 25:11, 30:22, 31:9
 36:17, 53:23, 54:5
unnatural 7:5
use 4:12, 8:18
 53:19, 70:23
utilities 49:16
utility 18:22

V

Valley 1:13, 2:10
 6:11, 38:12, 41:8
 41:13
Vanguard 59:4
 59:6, 59:9, 59:12
Vegas 19:12, 33:15
 33:17, 33:21, 33:25
 34:3, 34:4, 34:10
 35:10, 37:12, 37:14
 37:19, 38:9, 38:9
 41:25, 47:1, 47:7
 56:4, 56:5, 56:6
 56:7, 56:14, 56:19
 57:9, 57:15, 58:6
 58:10, 58:25
verbal 6:15, 7:4
verbally 7:1
versus 25:14
Victor 19:17
viewpoint 23:21
violates 24:7, 24:16
 25:1, 25:23, 26:4
 26:10, 26:19, 27:1
 28:2
violations 10:20
virtual 8:13
vision 42:1
visit 39:18

W

wait 9:2, 9:4
waived 73:10
walk 30:19
want 24:11, 24:21
 37:1, 37:2, 37:2
 53:9, 55:9, 65:22
 69:7
wanted 36:14
 36:20, 37:3, 37:7
 42:4, 64:16, 69:23
Washington 2:5
water 51:15, 51:16
 51:22
way 4:19, 4:22
 36:8, 37:22, 39:19
 41:21, 55:14, 65:2
ways 65:3, 65:4
Webex 2:3
Wednesday 1:14
 4:1
weeks 59:3
welcome 71:23
went 35:18, 37:12
 37:14, 38:8
western 36:17
Western.TaxCivil...
 2:7
WHEREOF 73:16
wireless 49:23
wish 64:22
witness 1:13, 3:3
 4:4, 5:8, 24:9
 24:18, 25:3, 25:25
 26:6, 26:12, 26:21
 27:3, 28:4, 33:20
 34:17, 34:20, 53:18
 53:22, 54:14, 61:21
 73:8, 73:10, 73:12
 73:16
woodworking 68:13
word 6:22
work 4:15, 18:14
 19:18, 19:24, 20:8
 20:25, 21:19, 40:4
 40:10, 40:13, 45:11
 45:14, 45:19, 45:24
 46:23, 52:16, 54:11
 58:5, 62:22, 63:24

worked 19:25, 20:5
 20:7, 20:9, 21:23
 33:14, 39:3, 47:4
 48:4, 58:1, 58:10
 58:22, 68:4
working 36:14
 38:18, 58:8, 58:12
 58:20
Wow 10:22
writing 63:8, 63:10
wrote 22:3

Y

yeah 43:5, 45:13
 45:14, 46:6, 49:20
 50:14, 51:16, 54:19
year 17:14, 57:1
 58:7, 69:10, 69:13
years 10:22, 17:17
 18:13, 21:12, 22:11
 22:18, 23:14, 29:1
 29:1, 29:2, 29:5
 29:7, 33:17, 35:7
 39:4, 52:24, 67:12
Yesterday 12:20
younger 10:23

Z

zones 34:13

1

10:00 34:14, 34:19
 34:20, 35:1
10:46 54:16
10:54 54:17
10:55 54:10, 54:13
100 70:3
1015 1:23
1075 2:11, 6:6, 6:7
11:28 72:2
11:55 54:9
13 16:20, 35:7
139 25:15
15 20:21
15,000 48:25
1965 16:20
1983 17:15

1998 25:16
19th 15:14
1st 13:22, 14:16
 14:18

2

20,000 48:25
2002 58:10, 58:25
2004 21:13, 24:5
 28:1
20044-0683 2:5
2005 24:15
2006 24:25
2007 25:22
2008 26:3, 58:11
2008/2009 58:16
2009 26:9, 58:12
2010 26:15
2011 21:15, 26:18
 36:12, 36:18, 58:24
 59:2
2012 21:15, 26:25
 36:8, 36:9, 36:23
 37:18, 38:9, 38:25
 44:19, 57:1, 59:1
2013 27:7, 38:25
 44:21, 44:23, 57:1
2014 27:10
2015 27:13, 49:7
2016 27:16
2017 21:13, 27:19
2018 60:6, 60:8
 67:11, 69:13
2019 28:21
2020 29:16
2023 1:14, 4:1
 4:25, 14:20, 73:16

3

30 10:22, 70:3
37 54:7, 55:19
 55:23

4

4 1:14, 3:5, 4:1
 36:21
401(k 59:5

UNITED STATES OF AMERICA v. MILLETT, et al.  1/4/2023                                                                    THOMAS S. MILLETT

| | | | | |
|---|---|---|---|---|
| 406)721-1143 1:24<br>4th 4:25 | | | | |
| **5** | | | | |
| 50/50 42:11, 42:11<br>  42:12<br>59801 1:24<br>59925 2:11, 6:7<br>  6:11 | | | | |
| **6** | | | | |
| 674 25:15<br>677 25:15<br>683 2:5<br>6th 13:6, 14:20<br>  15:4, 15:6, 15:8 | | | | |
| **7** | | | | |
| 7/7/2023 73:21<br>73 3:7<br>775 1:13, 2:10<br>  6:10, 38:11, 41:8<br>  41:13 | | | | |
| **8** | | | | |
| 8:59 1:14 | | | | |
| **9** | | | | |
| 9:21-cv-00047-D...<br>  1:6<br>9:21-cv-47 5:3<br>9:48 34:25<br>9000 33:21<br>9th 25:10, 25:14<br>  25:15, 73:16 | | | | |