IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CV 21–47–M–DWM |
| Plaintiff, | |
| vs. | OPINION and ORDER |
| THOMAS MILLETT, MICHELLE MCLAUGHLIN, and FLATHEAD COUNTY, | |
| Defendants. | |

On April 20, 2021, Plaintiff United States of America filed this action

pursuant to 26 U.S.C. §§ 7401 and 7403, seeking a federal tax lien against real

property owned by Defendants Thomas Millett and Michelle McLaughlin

(collectively "Defendants").[1]  (Doc. 1.)  The government now seeks sanctions

under Rules 30 and 37 of the Federal Rules of Civil Procedure on the grounds that

Millett refused to be deposed in person, Millett provided nonresponsive and

evasive responses during his telephonic deposition, and McLaughlin refused to be

deposed at all.  (Doc. 51.)  A hearing was held on March 3, 2023 in Missoula,

Montana.  Based on the parties' submissions and the arguments made on the

---

[1] The government and Flathead County have stipulated to the County's non-participation in this litigation.  (*See* Doc. 4.)

1

record, the government's motion is granted in part and denied in part. Defendants are compelled to attend in-person depositions on March 6 and March 7, 2023, at the Russell Smith Federal Courthouse in Missoula, Montana. Millett is further ordered to pay the government's expenses, exclusive of attorney fees, associated with his January 4 deposition.

BACKGROUND

On May 18, 2022, a preliminary pretrial scheduling conference was held, setting a bench trial for March 27, 2023. (*See* Doc. 35 at ¶ 1.) Consistently, the discovery deadline was set for January 6, 2023 and the motions deadline was set for February 13, 2023. (*Id.*)

## I.    Written Discovery

On July 21, 2022, the government sent Millett its First Set of Interrogatories, Requests for Admission, and First Requests for Production. (Ex. 1, Doc. 53-1.) On August 22, 2022, Millett responded, providing nonresponsive answers to many inquiries and objecting on various grounds, including First and Fifth Amendment grounds. (*See* Ex. 2, Doc. 53-2.) On November 30, 2022, Defendants produced their untimely initial disclosures. (Ex. 7, Doc. 53-7.)

## II.    Depositions

On September 1, 2022, counsel for the government emailed Defendants at simplytom65@yahoo.com, the Court-registered email address for both Millett and

McLaughlin, to schedule depositions, suggesting October 11 and 12 in Missoula, Montana. (Ex. 3, Doc. 53-3 at 4.) On September 8, Millett responded, saying that both he and McLaughlin were unavailable on those dates and that Missoula was an unacceptable location. (*Id.* at 3.) Millett instead proposed a single day of depositions at a hotel in Kalispell, Montana on October, 13, October 14, November 9, or "around Christmas" after December 21. (*Id.*) The government responded the next day, explaining that two depositions on separate days were required and suggesting the December date. (*Id.*) On September 14, Millett responded, stating that both he and McLaughlin would be available on December 22 and December 23, but only by telephone. (*Id.* at 2.) On September 16, the government responded, insisting on in-person depositions at least in part because of the voluminous exhibits. (Ex. 4, Doc. 53-4 at 5–6.) On September 21, Millett replied, accusing the government of bad faith and reiterating that Defendants would only be available for one day of depositions. (*Id.* at 3–5.) On September 23, the government responded that as the noticing party, it got to choose the manner, time, and location of the depositions and that they would proceed on December 22 (Millett) and December 23 (McLaughlin) in Missoula. (*Id.* at 2–3.) On October 3, the government sent a deposition notice reflecting the above dates to simplytom65@yahoo.com. (Ex. 5, Doc. 53-5.) On October 9, Millett acknowledged receipt and requested reimbursement details. (Ex. 6, Doc. 53-5.)

On December 18, counsel for the government tested positive for COVID. (Doc. 52-1 at ¶ 25.)  The next day, she emailed Defendants informing them of the positive test and stating that the December deposition would need to be rescheduled.  (Ex. 8, Doc. 53-8 at 2.)  Millett replied that same day, indicating that both he and McLaughlin would be available on January 4 and 5, 2023, in Missoula. (*Id.*)  On December 19, the government re-noticed the depositions for January 4 (Millett) and January 5 (McLaughlin) and sent that notice to simplytom65@yahoo.com.  (Ex. 9, Doc. 53-9.)  On December 20, Millett replied and acknowledged receipt.  (*Id.*)

On January 2, 2023, co-counsel for the government DePalma arrived in Missoula after having previously traveled to Bozeman prior to the holidays.  (Doc. 52-1 at ¶ 31.)  On January 3, government counsel Bissell flew out of Washington, DC to Missoula, but her flight was delayed, and she was stuck in Minneapolis, MN on that day.  (*Id.* ¶ 30.)  At 8:06 a.m. on the morning of January 4, the day of Millett's deposition, the government received the following email from Millett:

> I regret to inform you that I cannot attend today's deposition in-person due to experiencing some minor flu-like symptoms. However, I am ready, willing and looking forward to being deposed today (Wed Jan 4) beginning at 9am over the telephone. Due to the obvious inconvenience to you this will cause I will waive the 7 hour time limit per deposition day in order for you to ask all of your questions and if needed, will make myself available to finish up my deposition on Thurs Jan 5 before or after Ms. McLaughlin is deposed.  Unfortunately, I will not be available to be deposed on Friday Jan 6 due to having to travel out of

the state of Montana on that day and will not return until approximately March 1. A copy of the airline ticket can be provided upon request.

(Ex. 10, Doc. 53-10 at 3.) Millett affixed an electronic signature. (*Id.*) Beneath

Millett's note, McLaughlin wrote:

> This is Michelle McLaughlin. I also regret to inform you that I will not be attending my deposition tomorrow (Jan 5) <u>in-person</u> due to having a minor heart condition that is flaring up due to the stress that this deposition is causing. I will make myself available to be deposed tomorrow, Jan 5, my scheduled day, beginning at 9am by telephone [phone number omitted]. I will not be available to be deposed after Jan 5 due to previously scheduled appointments on Jan 6 and Jan 9 as well as travelling out of the state beginning Jan 10 and not returning to Montana for 6 weeks. If you would like a copy of my airline ticket I will provide it if asked.

(*Id.*) McLaughlin also affixed her electronic signature. (*Id.* at 4.) In response, the

government indicated that because it had been "given [] no other choice at this last

minute," the impending depositions would be conducted telephonically but that

they would need to be completed in person at a later time. (*Id.* at 2.) Defendants

thanked government counsel for her understanding and clarified how the electronic

exhibits would be shared. (*Id.*) Defendants also forwarded their heavily redacted

airline receipts. (Ex. 11, Doc. 53-11.)

## A.   Millett's Deposition

Millett's telephonic deposition commenced at 9:00 a.m. on January 4, 2023.

(*See* Doc. 52-1 at ¶ 38; Doc. 53-14.) While DePalma was present in person in

Missoula and prepared to complete the deposition, Bissell—who was stuck in

Minnesota due to weather—ultimately deposed Millett over the phone once it became clear that he would not attend in person. Although that deposition lasted over two hours, the government indicates that a number of Millett's answers were unresponsive or evasive. To be sure, during the first half of the deposition, Millett refused to answer many inquiries on relevancy grounds, including: his imminent travel plans, (Doc. 53-14 at 13–14); where he was born, where he grew up, or where at least one previous job was located, (*id.* at 16, 18); and who he currently works with, (*id.* at 52). He also invoked attorney-client privilege—despite proceeding pro se—when asked if he spoke to anyone in preparing for the deposition. (*Id.* at 11.) Millett further objected to the question of whether he filed federal tax returns with the IRS in 2004 "as the question violates [his] Fifth Amendment right, including, but not limited to, being compelling to be a witness against [himself] as an answer may be used to criminally prosecute [him]." (*Id.* at 24.) He raised that same objection when asked about filing tax returns in 2005, 2006, 2007, 2008, 2009, 2010, 2011, and 2012. (*Id.* at 24–27.) During that colloquy, the government informed Millett that an adverse inference could be drawn from his invocation of the Fifth Amendment. (*Id.* at 25.) Nevertheless, Millett continued invoked the Fifth Amendment at least once more. (*See id.* at 28.)

Approximately two hours into the deposition, counsel for the government determined that it was necessary to contact the presiding judge because deponents

6

"typically have to answer questions when they're asked." (*Id.* at 53.) During that call, Bissell was told to file a Rule 37 motion if necessary. (*Id.* at 54.) When the deposition resumed following this exchange, Millett stated the following:

> So the reason I am objecting to some of these questions is I truly believe that some of them are irrelevant, however, from my understanding of depositions, I can object, but for the most part, I have to answer the question; would you agree with that? [Government generally agrees.] So what I will do is—see, I do not want to relinquish my right to object, even at a later date, that's why I'm objecting. What I will do is, if I feel that it is—that I can object, I will object, but I will answer the question for you; is that satisfactory to you? Because that way, I feel that I retain my right to object at a later date. Is that okay?

(*Id.* at 55.) In response, the government stated that "that is the standard and the law" but that the government "will still be filing a motion under Rule 37, however." (*Id.*) To Millett's credit, after that point in the deposition, when he objected to a question, he also answered it. (*See, e.g., id.* at 60–61, 67–68.) He also did not invoke the Fifth Amendment after this point. The telephonic deposition was left open to allow for a future in-person deposition with exhibits.

## B.    McLaughlin's Deposition

At 10:21 p.m. on January 4, the night before her scheduled deposition, McLaughlin sent the government the following email:

> First. I want it to be known that Mr. Millet can not speak for me and does not speak for me. When he accepted the change in deposition date from December 22 to January 5 due to you getting sick with covid I did not authorize him to do that for me. In fact, I believe he is prohibited from doing that for me, making decisions for me and speaking for me.

Second. Since I never agreed to any change in deposition date and was not properly served the notice I consider the January 5 deposition date to be invalid and will not be attending. Also since there is a motion on the table for dismissal of this suit I don't want to waste my time or yours on a deposition when I believe the motion will be granted and my deposition will not be needed.

Third. From now on please send all notices, requests and other communication that is for me to this e-mail address . . . ellehcim111@gmail.com. You may consider this my 'in writing' consent to be served by e-mail.

(Ex. 12, Doc. 53-12 at 3.)  This was the first email the government received from the address ellehcim111@gmail.com.  (Doc. 52-1 at ¶ 53.)  The government responded the next morning—the morning of McLaughlin's schedule deposition— indicating that the deposition would proceed as scheduled.  (Ex. 12, Doc. 53-12 at 2.)  The deposition was opened at 9:00 a.m. and adjourned at 9:25 a.m. after efforts were made to contact McLaughlin over the phone and she did not respond or appear.  (*See* Ex. 13, Doc. 53-13; Doc. 52-1 at ¶¶ 56–57.)

## III.  Procedural History related to the Present Motion

On January 6, the government moved to extend the discovery deadline because the in-person depositions still needed to be completed and Defendants were traveling for the next month.  (*See* Doc. 45.)  That request was granted, and the discovery deadline was continued to March 6.  (Doc. 46.)

On January 13, the Court ruled on Defendants' pending motion for judgment on the pleadings, granting the motion insofar as McLaughlin retains a half-interest

in the real property at issue in light of her joint tenancy when the property was first acquired. (Doc. 48.)  That ruling, however, explicitly did not prevent the government from proceeding on any of its claims related to Millett's alleged half-interest. (*See id.*)

On February 9, the government once again filed a motion to continue deadlines, this time requesting that the remaining trial deadlines be continued commensurate with the previously-extended discovery deadline. (Doc. 49.)  That request was granted and a bench trial is now set for May 17, 2023, with discovery to close March 6[2] and motions due April 6. (Doc. 50.)  Also on February 9, the government filed the present motion for sanctions. (*See* Docs. 51–53.)  Defendants responded on February 22. (*See* Doc. 55.)  The government filed a reply on February 28. (*See* Doc. 56.)  A motion hearing was held on March 3; Millett and McLaughlin were present and Bissell appeared for the government.

## ANALYSIS

The government argues that "[s]ince discovery opened in this case, Defendants . . . have attempted to evade and obscure the discovery process." (Doc. 52 at 6.)  As evidence of this subversive behavior, the government cites

---

[2] The Court orally extended this deadline to March 10, which is also reflected below.

Defendants' repeated attempts to avoid participating in in-person depositions.[3]

The government insists that sanctions under Rules 30 and 37 are warranted,

specifically, default judgment. (*See* Doc. 51.) Alternatively, the government seeks

an order compelling Defendants to attend in-person depositions and for costs and

fees to be assessed against Defendants for not attending their in-person deposition

in January. (*Id.*) In response, Defendants argue that: (1) they were not properly

served with a deposition notice; (2) the partial granting of their motion for

judgment on the pleadings has narrowed the scope of discovery, making the

government's discovery requests no longer proportional; and (3) a deponent is not

subject to the sanctions identified by the government for failing to respond to

questions during a deposition. (*See* Doc. 55.) As with most discovery disputes,

the answer is provided by the Rules of Civil Procedure, which must be read

collectively and with the goal of "secur[ing] the just, speedy, and inexpensive

determination of every action and proceeding." Fed. R. Civ. P. 1.

## I.      Legal Standard

"The court may impose an appropriate sanction—including reasonable

expenses and attorney's fees incurred by any party—on a person who impedes,

---

[3] Despite attaching Defendants' written discovery responses and referencing them
here, the government does not appear to seek sanctions for any written discovery
violations. Nor would such a request be appropriate given the time that has lapsed
since those disclosures were made.

delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2). If "a deponent fails to answer a question asked under Rule 30 or Rule 31," the party seeking discovery may "move to compel disclosure and for appropriate sanctions." Fed. R. Civ. P. 37(a)(3)(B)(i). Such sanctions include the payment of reasonable fees and expenses. Fed. R. Civ. P. 37(a)(5)(A), (C). Moreover, if a party fails to attend a properly-noticed deposition or violates a court order, the sanctions may be quite severe, including: (1) directing that certain facts are established in favor of the government; (2) prohibiting Defendants from supporting or opposing certain claims or from introducing matters into evidence; (3) striking pleadings; or (4) rendering default judgment against Defendants. *See* Fed. R. Civ. P. 37(b)(2)(A)(i)–(vi), (d)(3).

## II.   Deposition Notice

Defendants first argue that the government's motion should be denied because the depositions were not properly noticed. "A party who wants to depose a person by oral questions must give reasonable written notice to every other party. The notice must state the time and place of the deposition and, if known, the deponents name and address." Fed. R. Civ. P. 30(b)(1). Party witnesses that fail to appear for a properly-noticed deposition are subject to the sanctions described in Rule 37(d). Here, the deposition notice was emailed to Defendants at simplytom65@yahoo.com on December 19, 2022. (*See* Ex. 9, Doc. 53-9.)

11

Defendants insist, however, that they were not properly served with the deposition notice because they did not consent to electronic service "in writing" as required by Rule 5(b)(2)(E).  They are correct as it relates to McLaughlin.

Rule 5, which addresses service of pleadings and other papers, allows service "by other electronic means that the person consented to in writing."  Fed. R. Civ. P. 5(b)(2)(E).  "An advisory committee note to that rule states that the written consent 'must be express, and [it] cannot be implied from conduct.'" *O'Neal Constructors, LLC v. DRT Am., LLC*, 991 F.3d 1376, 1379–80 (11th Cir. 2021) (quoting the Advisory Committee Note to 2001 Amendment).  Thus, service by email is permitted under Rule 5, but only if the recipient consented in writing to be served by email.

There are three potential sources of written consent in the record.  The first source is Defendants' "Pro Se Requests for Leave to File by E-mail," (Docs. 11, 13), and the "Agreements to Allow Pro Se Party to File by E-Mail," (Docs. 12, 14).  These forms only address, however, Defendants' ability to file documents electronically with the Court, not their receipt of such documents.  The second source is the "Pro Se Registration Form For The Electronic Case Filing System (CM/ECF)" forms executed by Defendants on June 5, 2022.  (*See* Docs. 37, 38.)  These forms state that "[b]y registering for electronic service, you waive your right to receive notice of documents by first class mail.  *See* Federal Rule of Civil

12

Procedure 5(b)(2)(E)." (*Id.*)  However, that disclosure further states: "Instead, you will be sent a Notice of Electronic Filing via email." (*Id.*)  This consent is therefore limited to service related to documents filed in the docket as the form states that the individual is registered "to file documents electronically[] and receive service of documents and notice of electronic filings sent to my email[] via the Court's electronic filing system (CM/ECF)." (*See id.*)  Thus, neither Court consent form conveys generalized consent to electronic service. *See Rushing v. Bd. of Supers. of Univ. of La. Sys.*, 270 F.R.D. 259, 260–61 (M.D. La. 2010).

Finally, however, the government provides with its reply brief an email dated July 21, 2022 wherein the government asked Millett if he would accept service of written discovery requests by email and Millett responded, "Service by e-mail is fine." (Ex. 13, Doc. 56-1.)  Millett's contention that he agreed to only receive a single discovery request via email is unpersuasive.  While consent cannot be implied from the mere prior use of email to communicate during discovery, *see Dalla-Longa v. Magnetar Cap. LLC*, 33 F.4th 693, 696 (2d Cir. 2022); *see also Walton v. First Merchs. Bank*, 2019 WL 920883, at *3 (S.D. Ind. Feb. 5, 2019) (finding that the fact that the party responded to other discovery emailed to her "does not equate to written consent for all discovery"), this express written statement is sufficient for Millett to have agreed to electronic service by the

.

13

government consistent with Rule 5(b)(2)(E).  This statement does not extend to

McLaughlin, however, as one pro se party cannot represent another.[4]

Even so, both Millett's and McLaughlin's failure to timely object constitutes

a waiver of the government's defective service.  Instead of objecting to the

deposition notices when they were received or simply not responding, Millett

acknowledged receipt of both the October and December deposition notices.  (*See*

Ex. 6, Doc. 53-6 at 2; Ex. 9, Doc. 53-9 at 2.)  Moreover, both Millett and

McLaughlin emailed the government the day before the depositions to affirm their

telephonic appearances.  (Ex. 10, Doc. 53-10 at 3.)  Thus, neither Millett nor

McLaughlin timely objected to the notice they received.  *Cf. In re United States*,

864 F.2d 1153, 1156 (5th Cir. 1989) ("[A]s a general rule, when a party fails to

object timely to . . . discovery efforts, objections thereto are waived."); *see*

*Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir.

1992) (same).  While McLaughlin ultimately did challenge proper notice in her

eleventh-hour email to government counsel, (*see* Ex. 12, Doc. 53-12 at 3), she did

so after already agreeing to appear via telephone and after government counsel

both made arrangements for the deposition and travelled to Missoula.

---

[4] Based on the argument and statements made by Defendants at the March 3
hearing, it appears that while Millett is prohibited from representing McLaughlin,
as both are pro se, there is a fair inference from her statements that, at least in some
aspects, he was acting on her behalf in addition to his own.

As a result, Defendants' challenges to their deposition notices lack merit. Nonetheless, the fact that McLaughlin was not properly served bears on what sanctions are appropriate as discussed below.

## III.   Scope of Discovery

Defendants next argue that discovery must be proportional to the needs of a particular case and that the government's motion ignores the fact that the Court has since ruled that McLaughlin owns an independent half-interest interest in the real property at issue. (Doc. 55 at 5; *see* Doc. 48.)  That argument lacks merit.  The government has the right to engage in discovery, which covers "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).  Obtaining the deposition testimony of the two named defendants is undeniably within the scope of appropriate discovery here.  Even though McLaughlin maintains a separate interest, the allegation of Millett's fraudulent conveyance of his interest and McLaughlin's nominee status remain at issue.  Notably, however, the government stated at the March 3 motion hearing that it is seeking foreclosure.  Such relief has not been pled, (*see* Doc. 1), and the deadline for amended pleadings has long since passed, (*see* Doc. 35).

## IV.   Millett's Deposition

Millett argues that Rule 37 does not allow for the imposition of sanctions on a party for failing to respond to questions during a deposition until *after* a court has

ordered a deponent to answer. (Doc. 55 at 3–4.) He is both right and wrong. While the broad sanctions available under Rule 37(b) and (d) are not available prior to a court order if a party attends his deposition, Rule 37(a) permits the deposing party to seek an order compelling a deponent to respond *and* requires that if such an order is issued, a court must award reasonable expenses to the movant unless "the opposing party's nondisclosure, response, or objection was substantially justified" or "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(ii), (iii); *see* Fed. R. Civ. P. 37(a)(5)(C) (indicating that the court *may* award such expenses if the motion is granted in part and denied in part). Thus, while the more severe sanctions under Rule 37(b) and (d) are not available, Rule 37(a) sanctions are. *See Estrada v. Rowland*, 69 F.3d 405, 406 (9th Cir. 1995) (holding that when a pro se party attended his deposition but refused to testify, "the proper remedy is a court order to testify under Rule 37(a), and not dismissal under Rule 37(b)(2)(C)").

In its reply brief, the government insists that "[a] party's refusal to engage in discovery and answer questions during a deposition is sanctionable." (Doc. 56 at 4.) While correct, the government ignores the nuance discussed above. The government seems to cite *Pioneer Drive, LLC v. Nissan Diesel America, Inc.*, 262 F.R.D. 552, 557 (D. Mont. 2009), and *Glick v. Molloy*, 2013 WL 140100, *2 (D. Mont. Jan. 10, 2013), for the proposition that failing to answer deposition

16

questions and failing to appear for a deposition are subject to the same sanctions. However, *Pioneer Drive* involved a Rule 30(b)(6) deposition and courts have determined that producing an unprepared *corporate* deponent is akin to failing to appear for a deposition. But *Pioneer Drive* specifically distinguished *Estrada*, where an individual deponent appeared but would not respond to questions. Moreover, *Glick* explicitly reinforces *Estrada*'s holding, emphasizing that when a pro se party appears but fails to answer, "Rule 37(d) is not the proper authority for sanctions against him" but "[r]ather, the proper remedy is for the Court to order [the deponent] to testify at a deposition." *Glick*, 2013 WL 140100, *2.

Here, Millett attended his deposition—albeit telephonically[5]—and consistently refused to answer deposition questions based on his assessment that they were not relevant. Thus, Millett's conduct falls under the purview of Rule 37(a). The next question then is whether his conduct violated the Rules. It did. "An objection at the time of the examination—whether to the evidence, to the party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition—must be noted on the record,

---

[5] The deposition was originally noticed as an in-person deposition that Millett failed to attend in person, potentially triggering Rule 37(d). Nonetheless, Rule 30 provides that the parties may stipulate to a remote deposition, *see* Fed. R. Civ. P. 30(b)(4), which the government reluctantly did here once it received Millett's email refusing to appear in person, (*see* Ex. 10, Doc. 53-10 at 2). As such the analysis included herein proceeds under Rule 37(a), not Rule 37(d).

but the examination still proceeds; the testimony is taken subject to any objection."

Fed. R. Civ. P. 30(c)(2). Millett undisputedly violated this rule. Thus, a sanction

is warranted. Millett is therefore compelled to attend an in-person deposition and

respond to the government's inquiries as provided for in the Rules of Civil

Procedure. *See Estrada*, 69 F.3d at 406. Moreover, because his violation was not

"substantially justified" nor do "other circumstances make an award of expenses

unjust," Fed. R. Civ. P. 37(a)(5)(A), (C), he is also required to pay the

government's expenses—exclusive of attorney fees—associated with the January 4

deposition. These expenses include the travel costs of one government attorney—

as the other was delayed prior to arriving in person—and the cost of the

stenographer. Millett is further warned that if he fails to comply with the Rules of

Civil Procedure following this Order, he will be subject to the more severe

sanctions available under Rule 37(b) or (d).

## V.    McLaughlin's Deposition

As discussed above, McLaughlin failed to appear for her deposition. Her

reasons for doing so, provided to the government at the eleventh hour, were

consistent with Defendants' repeated attempts to impede the progress of this

lawsuit. Such defiance represents more than a marginal failure to comply with the

discovery rules. *See United States v. Yennie*, 585 F. Supp. 3d 1194, 1199 (D.

Minn. 2022). Thus, sanctions are warranted under Rule 37(d)(3). Nonetheless,

default judgment—as requested by the government—is an extreme remedy and there are mitigating facts in play. For example, McLaughlin's statements at the March 3 hearing indicate that certain representations may have been made to the government by Millett on her behalf and without her knowledge. Moreover, while there are facts that support waiver, the impropriety of the notice cannot simply be set aside. *See* Fed. R. Civ. P. 37(d)(1)(A)(i) (permitting the imposition of sanctions if a party fails to appear "*after being served with proper notice*" (emphasis added)). That is especially so when a lesser sanction, such as ordering McLaughlin to attend a properly-noticed, in-person deposition, is still available. Thus, that is the proper remedy here. McLaughlin is cautioned, however, that the failure to comply with the Rules of Civil Procedure following this Order will subject her to the more severe sanctions available under Rule 37(b) or (d).

## CONCLUSION

Based on the forgoing, IT IS ORDERED that the government's motion for sanctions (Doc. 51) is GRANTED in PART and DENIED in PART as follows:

(1)    Defendants are compelled to attend in-person depositions on March 6, 2023 and March 7, 2023 at the Russell Smith Federal Courthouse as noticed by the government. Defendants are warned that the failure to appear for or participate in those depositions in good faith will result in further sanctions. *See* Fed. R. Civ. P. 37(b), (d).

(2)    Millett must pay the government's expenses, exclusive of attorney

fees, associated with his January 4 deposition.  This includes the travel expenses of

one government attorney and the costs of the stenographer.  The government shall

file an accounting of those expenses with supporting documentation within ten (10)

days of the date of this Order.  Millett has ten (10) days from the date of that filing

to challenge the reasonableness of, but not the obligation to pay, those expenses.

(3)    The discovery deadline is extended to March 10, 2023.

DATED this 3rd day of March, 2023.

_____  12:42 P. M.

Donald W. Molloy, District Judge
United States District Court

20