IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>THOMAS MILLETT, MICHELLE MCLAUGHLIN, and FLATHEAD COUNTY,<br><br>Defendants. | CV 21–47–M–DWM<br><br>OPINION<br>and ORDER |

On April 20, 2021, Plaintiff United States of America filed this action pursuant to 26 U.S.C. §§ 7401 and 7403, seeking a federal tax lien against real property owned by Defendants Thomas Millett and Michelle McLaughlin (collectively "Defendants"). (Doc. 1.) The government moves for summary judgment under Federal Rule of Civil Procedure 56, asking for a determination that: (1) Millett owes outstanding federal tax liabilities in the amount of $419,822.39 with interest; (2) as a result of the associated assessments, federal tax liens attach to all of his property and rights to property; and (3) because McLaughlin was not a bona fide purchaser of Millett's interest in the real property at issue, the federal tax liens for the 2004 to 2009 tax years encumber 50% of that real property. (*See* Docs. 65–69.) Defendants oppose and have filed their own

1

motion to dismiss and motion for summary judgment as it relates to Millett's tax liability.[1] (*See* Docs. 70–71, 74–75.) Ultimately, Defendants' motion is denied and the government's motion is largely granted as outlined below.

## BACKGROUND

The following facts are undisputed unless otherwise noted, (*see* Docs. 66, 71), and viewed in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam).

### I. The Taxes

Millett did not file income tax returns with the federal government for the 2004, 2005, 2006, 2007, 2008, 2009, 2011, and 2012 tax years. (Doc. 66 at ¶ 1). He filed tax returns for the 2010, 2013, 2014, 2015, 2016, and 2017 tax years. (*Id.* ¶ 2.) He did not, however, pay any federal income taxes for any of the years listed above, aside from any amounts withheld from his income as a W2 employee. (*Id.* ¶ 3.) When asked why he did not pay his taxes, Millett stated that he is exempt from federal taxation, (*id.* ¶ 4), as only people who work in Washington, D.C. earn taxable "income" under the Internal Revenue Code, (*id.* ¶ 5).

---

[1] Defendants' motion is untimely because while the motions deadline was set for May 26, 2023, (*see* Doc. 61), motions were required to be "fully-briefed" by this deadline, which "means that the brief in support of the motion and the opposing party's response brief are filed" by that date, (*see* Doc. 35 at ¶ 15). Defendants' motion was therefore due on May 5, 2023. Nevertheless, because Defendants' motion is based on the same arguments raised in response to the government's motion, (*see* Doc. 70), and raises jurisdictional issues, its merits are considered.

2

According to the government, the Internal Revenue Service ("IRS") determined the amount Millett owed for 2004, 2005, 2006, 2007, 2008, 2009, 2011, and 2012 based on information maintained by the IRS pursuant to 26 U.S.C. § 6020(b). (*Id.* ¶ 6.) The government further proffers that the IRS timely assessed Millett's 2010, 2013, 2014, 2015, 2016, and 2017 tax years based on the amounts Millett self-reported as due for those years, notice was provided to Millett of these outstanding liabilities, and as of April 21, 2023, Millett owes $419,822.39 in outstanding federal tax liabilities. (*Id.* at ¶¶ 6–7.) Because Millett did not pay his tax debt, the government argues that federal tax liens arose in favor of the government on the dates of assessment, encumbering all of Millett's property and his rights to property. *See* 26 U.S.C. §§ 6321, 6322; (Doc. 66 at ¶ 9). To provide notice of these statutory liens, the IRS recorded Notices of Federal Tax Lien with Flathead County pursuant to 26 U.S.C. § 6323(f). (Doc. 66 at ¶ 10.)

While Defendants do not dispute that Millett did not pay taxes for the years identified above, (*see* Doc. 71 at ¶¶ 1–5), they object to the evidence the government offers in support of its motion, specifically arguing that Exhibit 35, (*see* Docs. 68-1)—which contains a number of Forms 4340 that reflect assessed taxes—"is inadmissible hearsay as [the government] did not comply with the requirements of Evidence Rule 902(11)." (*See, e.g., id.* ¶ 6.) Defendants further insist that there is no evidence showing that "any notice(s) of deficiency were

3

mailed to defendant Millett's last known address at the time for any of the tax years 2004, 2005, 2006, 2007, 2008, 2009, 2011, and 2012. (Nothing in U.S. disclosures, discovery, or documents presented with motion)." (*Id.* ¶ 15.)

## II. The Property

A secondary dispute in this case is the relationship between Millett's tax liability and real property allegedly owned, at least in part, by Millett. On March 20, 2012, Defendants bought four aces of land in Flathead County at 775 Pleasant Valley Road, Marion, Montana 59925 ("the Property"). (*Id.* ¶ 12.) They split the $43,500 purchase price equally as joint tenants. (*Id.* ¶ 13.) Millett initially paid for the Property in whole and McLaughlin repaid her half in cash. (*Id.*) On September 18, 2012, Millett quitclaimed his half interest in the Property to McLaughlin for the price of "[o]ne dollar and love and affection." (*Id.* ¶ 14.)

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it impacts the outcome of the case in accordance with governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* All reasonable inferences must be viewed in the light most favorable to

4

the nonmoving party. *Tatum v. Moody*, 768 F.3d 806, 814 (9th Cir. 2014). Nonetheless, the nonmoving party must identify, with some reasonable particularity, the evidence that it believes precludes summary judgment. *See Soto v. Sweetman*, 882 F.3d 865, 870 (9th Cir. 2018) (explaining that while pro se parties are exempted from "*strict* compliance with the summary judgment rules," they are "not exempt[ed] . . . from *all* compliance," such as the requirement to identify or submit competent evidence in support of their claims).

Defendants also characterize their motion as a motion to dismiss, insisting that this Court lacks jurisdiction over the government's claims because certain procedural requirements were not met. *See* 26 U.S.C. §§ 6213(a), 6303(a). While Rule 12(b)(1) of the Federal Rules of Civil Procedure generally applies to jurisdictional challenge, *see Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004), resolution of this jurisdictional challenge depends on materials outside the pleadings and is intertwined with the merits of the case. It is therefore appropriate to consider Defendants' jurisdictional challenge in the context of a motion for summary judgment. *See Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983). Under this standard, "the moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. Unless that standard is met, the jurisdictional facts must be determined at trial by the trier of fact." *Id.*

ANALYSIS

The government seeks to reduce Millett's outstanding tax liabilities to judgment and for a finding that tax liens attached to his interest in the Property. In response, Defendants challenge only the tax liability arguments. The government prevails as to all of its claims except for Millett's tax liability for tax years 2009, 2011, and 2012. Because a genuine issue of material fact remains as to whether notices of deficiency were properly mailed to Millett for those years, those narrow claims shall proceed to trial.

**I.      Millett's Tax Liabilities**

If a taxpayer fails to pay his or her taxes, or the IRS believes that additional income tax is due, the IRS may enter a tax assessment. The IRS must first, however, mail a notice of deficiency to the taxpayer by certified or registered mail. 26 U.S.C. § 6212(a). Once this notice has been mailed, the taxpayer has ninety days to challenge its calculations in Tax Court. *Id.* § 6213. If a taxpayer does not file a petition in the Tax Court within the specified time, the IRS can make an assessment. *Id.* § 6213(c). As soon as practical and within sixty days of making the assessment, the IRS must issue a "notice and demand letter" to the taxpayer, specifying the amount due and demanding payment. *Id.* § 6303.

Here, Millett challenges the government's ability to reduce his tax liability to judgment on two grounds. First, Millett argues that the government fails to

show that it mailed a notice of deficiency in accordance with § 6212(a) for the years he did not file or pay taxes. Second, he argues that the government fails to show that assessments were validly made and the proper notice and demand issued. With limited exception, these challenges lack merit.

### A. Admissibility of Forms 4340

As a threshold issue, in tax cases such as this "the Government often produces IRS Form 4340, which is a computer generated form that reflects the taxes assessed to and paid by the taxpayer in a particular year." *United States v. Meyer*, 914 F.3d 592, 594 (8th Cir. 2019) (internal quotation marks omitted). In the absence of contrary evidence, this form is generally recognized as establishing that notices and assessment were properly made. *See Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993) (per curiam) (concluding that Form 4340 established that IRS sent a notice of assessment and demand for payment); *Hughes v. United States*, 953 F.2d 531, 535, 540 (9th Cir. 1992) (explaining that Form 4340 is presumptive evidence of a valid assessment); *see also Laszloffy v. C.I.R.*, 297 F. App'x 628, 629 (9th Cir. 2008) ("The Tax Court properly granted summary judgment to the Commissioner because Form 4340 established that the IRS made a valid tax assessment and sent Laszloffy a proper notice of assessment and demand for payment.").

7

Here, Defendants challenge the admissibility of the Forms 4340 for the tax years at issue, arguing they lack the adequate foundation and that the government failed to comply with the business records exception under Federal Rule of Evidence 902(11). Neither argument is persuasive because IRS Forms 4340 accompanied by an IRS Form 2866, "Certificate of Official Record," "are admissible as self-authenticating domestic public documents under Fed. R. Evid. 902(1) because they were certified under seal." *Hughes*, 953 F.2d at 540. Such is the case here. (*See* Doc. 68-1 at 2, 10, 17, 24, 32, 40, 47, 51, 58, 64, 68, 71, 74, 77.)[2] Therefore, the government may rely on these forms in arguing its motion and need not show the requirements of Rule 902(11), a distinct public records exception, apply.

### B. Notices of Deficiency

As to the merits of the government's tax claims, Millett first argues that the IRS did not mail him the requisite notice of deficiency for the tax years 2004, 2005, 2006, 2007, 2008, 2009, 2011, and 2012 in accordance with § 6212(a). Where, as here, a taxpayer claims that a notice of deficiency was never sent, the government bears the burden of proof "by competent and persuasive evidence." *Welch v. United States*, 678 F.3d 1371, 1378 (Fed. Cir. 2012). Nevertheless, "[a]

---

[2] The government filed two versions of the tax documents at issue. Docs. 68 and 69 contain identifying taxpayer information and are therefore sealed. Doc. 72 is a redacted version of the same exhibits. Citations herein are to Docs. 68 and 69.

notice of deficiency is valid if it is mailed to the taxpayer's last known address even if it is not received by the taxpayer." *Williams v. Comm'r*, 935 F.2d 1066, 1067 (9th Cir. 1991); *see* 26 U.S.C. § 6212(b)(1). And, the government "is entitled to a rebuttable presumption of proper mailing if it (a) shows that the notice of deficiency existed and (b) produces a properly completed Postal Form 3877 certified mail log (or equivalent)." *Meyer*, 914 F.3d at 594 (internal quotation marks omitted). This burden may also be met by evidence that is "otherwise sufficient," such as an IRS Form 4340. *Id.* at 594–95.

Here, the government did not produce any Postal Form 3877s but argues that "the notices of deficiency the United States filed with its Motion show proof of mailing." (Doc. 73 at 9.) Indeed, a notice of deficiency for tax years 2004, 2005, 2006, 2007, and 2008 was sent to 8174 Las Vegas Boulevard S., Suite 109, Las Vegas, NV 89123, and that Notice specifically states that it was sent by certified mail on November 5, 2010. (*See* Doc. 69-3 at 1–4.) Defendants do not challenge the propriety of that address. Thus, the government has provided competent, unrefuted evidence that the requisite notice was provided under § 6212(a) for those tax years.

On the other hand, while the government has also provided the notices of deficiency for tax years 2009, (*id.* at 5); 2011, (Doc. 69-5 at 1); and 2012, (Doc. 69-6 at 1), those notices do not state that they were sent by certified mail or

9

indicate the date that they were sent. The only indication they were mailed is a twenty-digit code printed at the top of each notice that bears a resemblance to the types of codes used by the United States Postal Service and a mailing sheet with Millett's address and a barcode. (*See, e.g.*, Doc. 69-5 at 12.) Without more information about what the bar codes and twenty-digit number mean, this is insufficient to evidence to prove initial mailing of the notices.

Nor do the Form 4340 records for 2009, 2011, and 2012 fill in the gaps. For the 2009 tax year, the Form 4340 specifically states "90 day letter undeliverable" in 2010 and has no entries for January 2012, which is the date on the Notice of Deficiency. (*See* Doc. 68-1 at 41; Doc. 69-4 at 5.) For the 2011 tax year, the Form 4340 states "default of 90 day letter" on April 15, 2012, (Doc. 68-1 at 52), even though the Notice of Deficiency is dated September 29, 2014, (Doc. 69-5 at 1). Finally, for the 2012 tax year, the Form 4340 states "default of 90 day letter" on April 15, 2013, (Doc. 68-1 at 59), even though the Notice of Deficiency is dated July 24, 2017, (Doc. 69-6 at 1). Thus, while a Form 4340 can be an appropriate source evidencing proper notice, *see Meyer*, 914 F.3d at 595, in the absence of further explanation, the current record is insufficient to establish the proper mailing of the notices of deficiency for tax years 2009, 2011, and 2012.

Based on the foregoing, summary judgment is granted in favor of the government as to the provision of proper notice under § 6212(a) for tax years 2004,

2005, 2006, 2007, and 2008; however, a genuine issue of material fact remains as to the mailing of the notices of deficiency for tax years 2009, 2011, and 2012. *See Augustine*, 704 F.2d at 1077.

## C. Assessments

In an action to collect tax, the government bears the initial burden of proof. *Oliver v. United States*, 921 F.2d 916, 919 (9th Cir. 1990). The government may satisfy this initial burden by introducing into evidence its assessment of taxes due. *United States v. Stonehill*, 702 F.2d 1288, 1293 (9th Cir. 1983). An assessment is made "by recording the liability of the taxpayer in the office of the Secretary in accordance with the rules and regulations prescribed by the Secretary." 26 U.S.C. § 6203. "The IRS satisfies its obligations under § 6203 when an assessment officer signs a summary record of assessment, describing (1) the taxpayer's name and address; (2) the character of the assessed liability; (3) the taxable period (if any); and (4) the amount of the assessment." *Hefti v. IRS*, 8 F.3d 1169, 1172 (7th Cir. 1993). As mentioned above, in the absence of contrary evidence, a Form 4340 is generally recognized as establishing that notices and assessment were properly made. *See Hansen*, 7 F.3d at 138. Here, Defendants argue that the government cannot rely on Forms 4340 because the forms do not contain the requisite "23C" assessment date and the government did not comply with the notice requirements of 26 U.S.C. § 6303(a). Because these arguments are unpersuasive and Defendants

present no other contrary evidence, summary judgment is granted in favor of the government as to Millett's tax liability for tax years 2004–08, 2010, and 2013–17.

Defendants first insist that the contents of the Forms 4340 are insufficient to support the tax assessments as they do not contain a "23C" assessment date. Indeed, the Ninth Circuit has held that while "IRS Form 4340 provides at least presumptive evidence that a tax has validly been assessed under [26 U.S.C.] § 6203," that form must contain a "'23C date,' indicating the date on which the actual assessment was made." *Huff v. United States*, 10 F.3d 1440, 1446 (9th Cir. 1993). However, as argued by the government, the Forms 4340 contain an assessment date in the far-right column. (*See, e.g.*, Doc. 68-1 at 72 (reflecting taxes assessed on January 6, 2020 for tax year 2015).) Contrary to Defendants' position, the forms need not use the terminology "23C" and "the IRS need not submit the underlying foundational documents absent evidence from the taxpayer challenging the validity of the assessments." *Ostheimer v. United States*, 2006 WL 2457943, at *3 (D. Mont. May 24, 2006). "[Defendants]' suggestions and conjecture are not sufficient to rebut [the government's] summary judgment motion." *Id.*; *see also United States v. Howe*, 2022 WL 3227736, at *7 (D. Idaho Aug. 10, 2022) ("[T]he Forms 23C . . . which are the bases for the creation of the Forms 4340[] are not relevant to resolving the dispositive issues in this case, and

their production would be unnecessarily cumulative and duplicative of documents already produced.").

Defendants further argue that there is no evidence that the assessments were sent to Millett, so the government has not shown compliance with 26 U.S.C. § 6303(a), which provides:

> the Secretary shall, as soon as practicable, and within 60 days, after the making of an assessment of a tax pursuant to section 6203, give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof. Such notice shall be left at the dwelling or usual place of business of such person, or shall be sent by mail to such person's last known address.

However, as argued by the government, the Forms 4340 themselves show that the IRS sent notices and demands to payment to Millett.[3] *See Hansen*, 7 F.3d at 138 ("[Forms 4340 are generally] sufficient to establish that notices and assessments were properly made"); *Hughes*, 953 F.2d at 540. Because Defendants present no evidence to the contrary, they fail to raise a genuine dispute of material fact under § 6303(a). *See Hansen*, 7 F.3d at 138 (requiring the nonmoving party to "come forth with specific facts to show that a genuine issue of material fact exists").

Accordingly, the summary judgment is granted in favor of the government for the taxes assessed in tax years 2004–2008, 2010, and 2013–2017.

---

[3] Defendants further argue that no notices were sent to McLaughlin regarding the tax liability. This fact is immaterial, as the government is only pursuing Millett's tax liability and *his* interest in any real property at issue.

13

D. **Penalties**

Finally, Defendants argue that the government has failed to adequately prove the amount of penalties. Indeed, under 26 U.S.C. § 7491(c), the government bears the burden of production with respect to the liability of an individual for any penalty. "In order to carry that burden, [the government] must produce sufficient evidence to establish that it is appropriate to impose the additions." *McLaine v. C.I.R.*, 138 T.C. 228, 245 (2012). "Once [the government] has done so, the burden of proof is on [the taxpayer] to show the additions are improper." *Id.* Here, as argued by the government, the Forms 4340 support a finding that Millett made no payments—beyond his W-2 withholding—in the applicable tax years. Moreover, Millett admits that he did not do so. (*See* Doc. 71 at ¶ 3.) And, the Forms 4340 specifically outline the amounts owed as penalty for failing to file or pay. Thus, the government has met its burden. *See United States v. Trevitt*, 196 F. Supp. 3d 1366, 1379 (M.D. Ga. 2016) (finding that IRS officer declaration and Forms 4340 were sufficient to meet burden under § 7491(c)). Because Defendants present no evidence to the contrary, summary judgment is granted in favor of the government as to the penalties assessed.

E. **Conclusion**

Based on the foregoing, summary judgment is entered against Millett for his outstanding federal tax liabilities, plus statutory interest and penalties, for tax years

14

2004–08, 2010, and 2013–17. But genuine issue of material fact remains as whether the notices of deficiency for tax years 2009, 2011, and 2012 were properly mailed to Millett.

## II. The Property

The government further seeks judgment that these tax liabilities encumbered Millett's interest in the Property and remain attached to that Property despite its subsequent transfer to McLaughlin. Specifically, the government argues that McLaughlin was not a bona fide purchaser of Millett's interest in the Property because she did not pay valuable consideration for his interest. Defendants' only response to this argument appears in their Statement of Disputed Facts, wherein they state that "Love and affection were also part of the agreement and is of value, and no evidence exists it was not given." (*See* Doc. 71 at ¶ 14.) The government has the better argument.

### A. Attachment of the Lien

The government first argues that the tax liens arising from the liabilities discussed above attached to Millett's interest in the Property at the time of purchase. Pursuant to 26 U.S.C. § 6321, after notice and demand for payment and a taxpayer's failure to pay, a lien arises in favor of the United States in the amount of the assessment. That lien attaches to "all property and rights to property" of the taxpayer on the date of assessment and continues until the liability is extinguished.

26 U.S.C. §§ 6321, 6322. A tax lien is perfected upon assessment without additional action. *United States v. Vermont*, 377 U.S. 351, 352 (1964).

As discussed above, with the exception of tax years 2009, 2011, and 2012, the government properly assessed federal tax liability against Millett for the years at issue. Thus, federal tax liens arose on the following dates: April 4, 2011 (2004–2008); January 6, 2020 (2013, 2015–2016); January 13, 2020 (2014); and February 10, 2020 (2017). (*See* Docs. 68-1, 68-3.) Nevertheless, the government seeks to attach only the liens that arose prior to 2012. Thus, the April 4, 2011 liens for the 2004–08 tax years attached to all of Millett's property and interest in property, including his 50% interest in the Property, which was acquired on March 20, 2012. (Doc. 66 at ¶ 12.) While the 2009 tax lien may also have properly attached to the Property, that will depend on whether it was properly noticed in the first instance as discussed above.

B.  **Survival of the Lien**

Generally, "[t]he transfer of property subject to the attachment of the lien does not affect the lien." *United States v. Bess*, 357 U.S. 51, 56–57 (1958). Nevertheless, if a taxpayer transfers the lien-encumbered property to a "purchaser" before the government records the lien, then the lien no longer attaches to the property and the "purchaser" takes the property free of the lien. 26 U.S.C. § 6323(a), (f). A "purchaser" is a "person who, for adequate and full consideration

16

in money or money's worth, acquires an interest . . . in property which is valid under local law against subsequent purchasers without actual notice." 26 U.S.C. § 6323(h)(6). Thus, the question here is whether McLaughlin paid sufficient consideration to qualify as a "purchaser." She did not.

Contrary to the government's briefing, the issue of adequate consideration is a matter of federal, not state, law. *See United States v. McCombs*, 30 F.3d 310, 330 (2d Cir. 1994) (holding that while whether a taxpayer conveyed a property to her daughters for adequate consideration under New York law was helpful, it was not dispositive of whether the daughters were federally-protected "purchasers" under § 6323(a)); *see also United States v. Sabby*, 2014 WL 988459, at *3 (D. Minn. Mar. 13, 2014) ("The consideration requirement is determined by federal law."). The Treasury Regulations define "adequate and full consideration" to require "consideration in money or money's worth having a reasonable relationship to the true value of the interest in the property acquired." 26 C.F.R. § 301.6323(h)-1(f)(3). "Money or money's worth" is then defined as including "tangible or intangible property, services and other consideration reducible to a money value," but excluding such things as "love and affection . . . or any other consideration not reducible to a money value."[4] *Id.* § 301.6323(h)-1(a)(3).

---

[4] Notably, this is consistent with Montana law. *See Baker Nat'l Bank v. Lester*, 453 P.2d 774, 780 (Mont. 1969) ("'[L]ove and affection' of the grantor for the grantees does not constitute valuable consideration for a conveyance.").

17

Here, Millett conveyed his half-interest in the Property to McLaughlin for "[o]ne dollar and love and affection." (Doc. 71 at ¶ 14.) Neither qualifies as adequate and full consideration under § 6323(h)(6). The latter is explicitly excluded from consideration per the regulations discussed above. As it relates to McLaughlin's payment of $1.00, Defendants purchased the Property for $43,500 in March 2012. (*Id.* ¶¶ 12–13.) Thus, the value of Millett's interest at that time was at least $20,000. There is no evidence, or reasonable argument, that .005% of that amount would be considered the "true value" of that same interest six months later. *See United States v. Carson*, 741 F. Supp. 92, 95 (E.D. Pa. 1990) (rejecting $1.00 payment as "adequate and full consideration" under § 6323(h)(6)).

Because McLaughlin did not pay adequate and full consideration for the Property and was therefore not a "purchaser" under § 6323(a), the April 4, 2011 liens remain attached to a one-half interest in the Property despite the transfer. *See Bess*, 357 U.S. at 57.

## CONCLUSION

Based on the forgoing, IT IS ORDERED that the government's motion for summary judgment (Doc. 65) is GRANTED as follows:

(1) Millett's tax liability for 2004–2008, 2010, and 2013–2017 shall be reduced to judgment. At the close of the case, the government must submit a

proposed judgment form containing the specific amounts, including interest and penalties, for these tax years.

(2) The April 4, 2011 liens for tax years 2004–2008 attached to all of Millett's property and interest in property, including his 50% interest in the Property.

(3) Those liens remain attached to a one-half interest in the Property despite its transfer to McLaughlin.

IT IS FURTHER ORDERED that the government's motion (Doc. 65) is DENIED as to assessing Millett's tax liability for tax years 2009, 2011, and 2012 and in finding a lien on the Property for tax year 2009. These matters shall proceed to trial.

IT IS FURTHER ORDERED that Defendants' motion to dismiss and motion for summary judgment (Doc. 74) is DENIED in its entirety.

DATED this 15th day of June, 2023.

_____
Donald W. Molloy, District Judge
United States District Court